OPINION OF THE COURT
Shanley N. Egeth, J.
The separate summary judgment motions and cross motion relating to this interstate no-fault puzzle are hereby consolidated for a single joint disposition. After two conferences and oral argument, submission of multiple briefs, and considerable independent research, the legal relationships of the parties *130 have been sufficiently clarified to provide answers to the threshold questions which are determinative of the motions.
FACTS UNDERLYING THE ACTION
The accident — parties
On December 13, 1975, the defendant Margaret Halfpenny (Halfpenny), a resident of New York, was seriously injured in an auto accident while operating her New York registered vehicle in Secaucus, New Jersey. She claims that the accident was due to the negligence of Dr. Robert A. Johnson, a New Jersey resident, who was operating his New Jersey registered and garaged motor vehicle at the time.
Parties — insurance coverages
Halfpenny was insured by Government Employees Insurance Company (GEICO) under the terms of its standard no-fault insurance policy issued in New York pursuant to the then applicable laws of New York. It contained standard no-fault coverage, plus an “Additional Personal Injury Protection Amendment” to provide first-party benefits for an out-of-State accident. Dr. Johnson was issued the standard New Jersey no-fault statutory policy providing $100,000 liability coverage by General Accident Insurance Group (General). In addition, he procured an excess umbrella liability policy with substantially greater coverage from Hartford Accident & Indemnity Co. (Hartford).
Halfpenny’s actions
Halfpenny received payments for basic economic loss (PIP— first-party benefits) from GElCO, her New York no-fault carrier in the total sum of $49,079.40.
Halfpenny also commenced an action in the United States District Court, Eastern District of New York, based upon diversity of citizenship, to recover the sum of $1,000,000 in damages from Dr. Johnson for the injuries sustained in the accident. The complaint by its terms explicitly sought only those damages recoverable by a plaintiff subject to the provisions of the New York no-fault statute. Paragraph 10 of the complaint reads as follows: "That by reason of the said occurrence the plaintiff has sustained serious injury as defined in Subdivision 4 of Section 671 of the Insurance Law of the State *131 of New York or economic loss greater than basic economic loss as defined in subdivision 1 of Section 671 of the Insurance Law”.
During the pendency of this action GEICO wrote to its assured Halfpenny and to the other liability carriers claiming a lien for the return of its $49,079.40 in PIP payments from any recovery in the action. Although it presently concedes that it had no right to lien status, GEICO asserts that it placed everyone on notice of its claim for reimbursement of its policy payments.
Settlement in Federal Court
The Halfpenny action was settled before trial in Federal court for $375,000. General agreed to pay $100,000, its full coverage, and Hartford, $275,000. The scope of the settlement was made a matter of record in open court before Judge Brieant. The following abstracts are considered relevant to these motions:
"The settlement offer then includes the full amount of policy coverage as far as the liability aspect of the policy is concerned, concerning personal injury.
* * *
"Ms. Halfpenny, do you understand that your lawsuit for personal injuries, pain, suffering and damages incurred as a result of your accident of December 13, 1975 is being settled for the total sum of $375,000.
* * *
"The Court understands that no lien has been asserted against Miss Halfpenny by the company which paid the so-called no-fault benefits. And I understand that none could be so asserted. So the liens we’re talking about are for medical expenses and for excess for the money she has already collected, and I presume already paid to the doctors from her no-fault benefits.
* * *
"It is further understood Your Honor that the amount offered in settlement is for the personal injury claims asserted in the complaint before this Court, and the associated damages that arose out of the claim asserted before this Court.
* * *
"Certainly and we are also settling, if it please the Court, *132 since the complaint makes reference to prospective damages and treatment anything that comes up in the future will be borne by Ms. Halfpenny.”
After settlement of the Federal court action Halfpenny placed $49,079.40 of the settlement proceeds in escrow pending a determination of the claims asserted in this action.
THIS ACTION AND THE MOTIONS
Plaintiff GEICO has commenced this action against the defendants Halfpenny, General and Hartford, to recover the $49,079.40 paid by it under its policy. It claims subrogation status arising out of the PIP payments by virtue of the following language contained in its policy issued to Halfpenny: "subrogation — In the event of any payment for extended economic loss, the Company is subrogated to the extent of such payments to the rights of the person to whom, or for whose benefit, such payments were made. Such person must execute and deliver instruments and papers and do whatever else is necessary to secure such rights. Such person shall do nothing to prejudice such rights”.
The complaint alleges, inter alia: that plaintiff GEICO put all parties on notice of its claim for reimbursement; that by settling the liability case and disbursing the proceeds without making provision for plaintiff’s reimbursement rights, the defendant Halfpenny interfered with, failed to secure and prejudiced plaintiff’s contract subrogation rights, and thereby breached the provisions of her insurance policy; and that the other carriers incurred liability by acting in derogation of plaintiff’s subrogation rights, in agreeing to a settlement and disbursing funds without provision for reimbursement to plaintiff.
Separate motions for summary judgment have been made on behalf of the defendants Halfpenny, Hartford, General and Johnson. Plaintiff opposes the motions and has cross-moved for judgment against all defendants.
THRESHOLD ISSUES
Determination of the following related basic preliminary questions is crucial to a proper resolution of the rights of the parties on this motion.
A. The nature and extent of the cause of action available to, and commenced by, Halfpenny as a result of the accident; and
*133 B. The scope, intent, and effect of the release and settlement agreement of the parties in the United States District Court.
TORT ACTION AVAILABLE TO HALFPENNY
No-Fault Laws
New Jersey and New York are now, and at the time of the accident they both were, States which enacted no-fault laws in abridgment of the prior common-law tort remedy. At present the statutes in both States reflect a public policy which requires a carrier paying first-party statutory benefits (PIP) to absorb the economic impact of its policy obligation, and bars any reimbursement from the assured or the tortfeasor’s carrier via subrogation or intercarrier company arbitration. At the time of this accident the present New Jersey statute was effective, but New York authorized intercarrier arbitration as an exclusive carrier recoupment remedy until 1977. (NJ Stat Ann, § 39:6A-9; Insurance Law, §§ 671, 672, 674.) Both of these statutes, however, are only applicable when the parties involved are covered in accordance with its mandate. If the parties do not fall within the ambit of the statute, they receive no no-fault benefits and they retain the tort remedy which existed prior to no-fault enactment. The New Jersey statute is applicable to "Every owner or registered owner of an automobile registered or principally garaged” in New Jersey (NJ Stat Ann, § 39:6A-3) and provides statutory no-fault protection to an insured, member of the family residing in the household, other persons injured while occupying or using the insured vehicle, using the vehicle with the insured’s consent or to pedestrians injured by such use. (NJ Stat Ann, § 39:6A-4.) Under the statute a nonresident in a non-New Jersey registered or insured vehicle, injured in an accident in New Jersey with a covered vehicle, is not covered by or subject to the New Jersey no-fault law (see American Hardware Mut. Ins. Co. v Bradley, 153 NJ Super 72). Such person would still possess the common-law tort cause of action which includes a right of recovery of medical expenses (see Cirelli v Ohio Cas. Ins. Co., 72 NJ 380; Theobold v Angelos, 40 NJ 295; Coll v Sherry, 29 NJ 166).
It should also be noted that a person injured in an out-of-State accident is not covered under the New York statute, but PIP payments are procurable thereunder by contracting therefor at an additional premium, as was done in the instant case.
*134 Choice of Law
Under all of the facts herein it is beyond question that a cause of action by Halfpenny against Johnson for damages arising out of this accident is determinable under the law of the State of New Jersey. No considerations of equity, points of contact, public policy or harsh guest statute here exist to alter the long-accepted conflict of law rule of lex loci delicti. (See Neumeier v Kuehner, 31 NY2d 121; Tooker v Lopez, 24 NY2d 569; Babcock v Jackson, 12 NY2d 473.) Here an injured New York resident involved in a New Jersey accident allegedly caused by a New Jersey resident operating a vehicle registered and insured pursuant to the laws of the State of New Jersey has recourse to those remedies which exist under New Jersey law. New Jersey has as great, if not a greater, "legitimate interest” in this occurrence than New York (see Tooker v Lopez, supra, p 576).
This issue should not be confused with the separate (here irrelevant) question of choice of law applicable to construe the GEICO-Halfpenny insurance contract executed in New York pursuant to its statutory authorization. Questions as to construction of that contract are determinable by application of New York law (International Planning v Daystrom, Inc., 24 NY2d 372, 382; Auten v Auten, 308 NY 155, 161; Buzzone v Hartford Acc. & Ind. Co., 23 NJ 447, 452, 453), but interpretation of this insurance contract has no bearing upon the issue of the nature and extent of the Halfpenny cause of action arising out of the New Jersey accident. (Eckmeyer v Colburn, 138 NJ Super 164.)
The Halfpenny Tort Action
Although Halfpenny was authorized to commence a traditional New Jersey common-law tort action for damages against Johnson, in which recovery was sought for reimbursement of medical and other expenses, disability and loss of earnings, in addition to damages for pain and suffering, she did not do so. By inadvertence, misconception of available remedy or by design, the action commenced in the Federal court was framed to seek only that recovery which would be authorized under an applicable New York no-fault statute. The pleading clearly limited the recovery sought to pain and suffering plus expenses in excess of the $50,000 PIP statutory exclusion. That all parties and the court so understood the *135 situation is clearly revealed in the colloquy and the provisions of the settlement stipulation. No recovery was sought or paid for the basic PIP medical expenses, although Halfpenny had the right to sue for them.
GEICO ACCRUED SUBROGATION RIGHTS
Unless interdicted by any applicable bar in the no-fault statutes, GEICO is entitled to be subrogated to Halfpenny’s rights against Johnson in its effort to gain reimbursement of the $49,079.40 paid pursuant to its contractual no-fault coverage. This would be true in both New York and New Jersey. (King v Pelkofski, 20 NY2d 326; Ocean Acc. & Guar. Corp. v Hooker Electrochemical Co., 240 NY 37; see Aetna Cas. & Sur. Co. v Schulman, 70 AD2d 792; Standard Acc. Ins. Co. v Pellecchia, 15 NJ 162; Pennsylvania Mfrs. Assn. Ins. Co. v GEICO, 136 NJ Super 491.)
In New York Jurisprudence (57 NY Jur, Subrogation, § 1, p 35), subrogation has been defined as "[T]he right of one person, upon discharging another person’s obligation, to be substituted for the other person’s obligee so as to stand in the same position as the obligee had stood against the other person before the obligation was discharged”.
An insurer’s subrogation right is defined in Couch on Insurance (vol 16, § 61.4, pp 239-240), as follows: "An insurer has the right to recover, by way of subrogation, for damages that it has been called upon to pay to an insured under its policy. The subrogation of an indemnity insurer arises by operation of law when it makes payment to the insured”.
The policy of insurance between GEICO and Halfpenny explicitly created a subrogation right for the return of the PIP payment. By contract, and by operation of law upon making the contractual payment, GEICO’s subrogation right came into being. This right has in no way been negated by the New Jersey no-fault law, which is inapplicable to the cause of action arising out of the New Jersey accident. The New York no-fault statute did not obliterate GEICO’s subrogation right, although a question may exist as to whether the policy contract right may be exercisable only by way of intercompany arbitration between carriers under the provisions of the then applicable New York statute. There is no present necessity to resolve this question in view of the subsequent discussion herein and the disposition of the instant motions.
*136 A brief definition of the nature of the subrogation right is warranted. The contract of insurance creates the subrogation right and explicitly directs Halfpenny to execute required documents, and to do what is necessary to secure the subrogation rights and do nothing to prejudice them. The contract does not obligate Halfpenny to reimburse GEICO for the moneys paid pursuant to the policy. No authorization for a lien has been created by the contract or under law. GEICO concedes it had none. It presently recognizes that its prior written lien notice to the defendant carriers was ineffective for that purpose, but it asserts that it rather put the recipient carriers upon notice that it was claiming subrogation rights. It should also be noted that the subrogation right extends only to the substitution of GEICO for Halfpenny respecting the right to collect the items paid by GEICO, but not to any claim of Halfpenny for compensation from the tort-feasor as to other items of damage sustained in the accident.
SETTLEMENT AND RELEASE DID NOT IMPAIR GEICO’S SUBROGATION RIGHTS
Although it is now clear that Halfpenny had the right to maintain a traditional common-law action for damages (including medical expenses and loss of earnings), and that despite the enactment of the no-fault statutes in New York and New Jersey GEICO retained its historic equitable subrogation right, it is nevertheless clear that on the facts of this case the actions of the parties have not impaired GEICO’s subrogation rights. Those rights would only be impaired if the actions of the defendants in settling the Federal action served to impair or extinguish GEICO’s right to seek recovery of the moneys paid by it in first-party no-fault benefits. For a number of reasons present in this case, the actions of these defendants did not compromise GEICO’s interests.
The Settlement and Release
If the settlement agreement effectuated in the Federal court action and the general release delivered in implementation thereof did not in and of themselves extinguish or limit GEICO’s subrogated right to recover the moneys it paid to Halfpenny from Dr. Johnson, neither Halfpenny nor the paying carriers have impaired GEICO’s subrogation rights. Halfpenny’s insurance contract with GEICO imposes no obli *137 gation upon her to make repayment from her own funds, or to act as a collection agent for GEICO. She is merely obligated to cooperate in executing documents and prohibited from doing any acts which prejudice the subrogation right. GEICO contends that the settlement of the tort action against Johnson and execution and delivery of the general release does that. In fact, it does not.
The general rule applicable to the impact of the general release executed in New York in this case was succinctly enunciated by the Court of Appeals in Mangini v McClurg (24 NY2d 556, 562), as follows: "[W]hile it has been held that an unreformed general release will be given its full literal effect where it is directly or circumstantially evident that the purpose is to achieve a truly general settlement (Lucio v. Curran, 2 N Y 2d 157), the cases are many in which the release has been avoided with respect to uncontemplated transactions despite the generality of the language in the release form (e.g., Cahill v. Regan, 5 N Y 2d 292; Mitchell v. Mitchell, 170 App. Div. 452, 456; see, also, Simon v. Simon, 274 App. Div. 447, 449; Haskell v. Miller, 221 App. Div. 48, affd. 246 N. Y. 618; Rubinstein v. Rubinstein, 109 N. Y. S. 2d 725, 732, affd. 279 App. Div. 1073, affd. 305 N. Y. 746; 49 N. Y. Jur, Release and Discharge, §§ 19, 31, 34, 35, 46).” It is accordingly clear that the intention of the parties with respect to its purpose at the time of execution determines the effect of a release which is general in form (Bradley Realty Corp. v State of New York, 54 AD2d 1104). The burden of proof on the issue is on the party seeking to assert the validity of the release as a bar to a claim (see Mangini v McClung, supra; Fleming v Ponziani, 24 NY2d 105, 110).
Application of this test to the facts at bar leaves no doubt that the parties to the settlement and the release did not intend to encompass GEICO’s subrogated claim for recovery of the no-fault benefits, which it paid to Halfpenny, within the scope and ambit of the settlement. Halfpenny’s complaint makes it clear that the subrogated items of damages were not encompassed within the Halfpenny prayer for relief in the action. It is equally certain that all parties were aware of the GEICO claim (although it had no lien as originally claimed). The intention of the parties to the release in this case was not left to inference or speculation. They explicitly set it forth in their stipulation of settlement upon the record and in their colloquy with and before the court, which was also of record. *138 It was made crystal clear that all claims arising out of the accident were being released except the one to which GEICO attained subrogation rights. This court therefore determines that the release did not extinguish GEICO’s subrogation right, because the agreed settlement payment did not encompass a recovery for the plaintiffs subrogated economic loss (Scinta v Kazmierczak, 59 AD2d 313; cf. Kozlowski v Briggs Leasing Corp., 96 Misc 2d 337 [applying rule but finding that the parties intended the settlement to encompass all damages including economic loss]; Faust v Luke, 80 Misc 2d 953, 955-956; Camden Fire Ins. Assn. v Prezioso, 93 NJ Eq 318).
Notice
Even if the release had been intended to encompass the claim for economic loss (which it clearly did not) GEICO would still not have been precluded from proceeding against the settling carriers in the tort action. There is no question but that they had actual notice of the existence of a potential subrogation claim by GEICO. This is confirmed by the GEICO lien notices (which it concedes was ineffective for lien purposes) and the language of record setting forth the extent and circumstances of the settlement. Under these circumstances the rule enunciated by the Appellate Division, Second Department, in Silinsky v State-Wide Ins. Co. (30 AD2d 1, 3-4) is applicable. This rule was recently quoted by the Appellate Division, First Department, in Aetna Cas. & Sur. Co. v Schulman (70 AD2d 792, 793, supra) as follows: "As the Appellate Division, Second Department, observed (pp 3-4): 'The defendant also asserts that the plaintiffs claim is barred by virtue of the general release given to the tort-feasors. The authorities are in agreement that a release given to a tort-feasor who has knowledge of the insurer’s rights will not preclude the insurer from enforcing its right of subrogation against the wrongdoer * * * In the case at bar there is no dispute that the tortfeasors had knowledge of the defendant’s subrogation rights. Consequently, plaintiff is not estopped from maintaining this action as nothing was done to prejudice the defendant’s rights’.” Application of this rule would bar Johnson, or his carriers, who are defendants in this declaratory judgment action, from asserting that the general release executed by Halfpenny constitutes a bar to the prosecution of the GEICO subrogation claims. It might be parenthetically noted that, in addition, the insurance carriers cannot be chargeable with the *139 defeat of GEICO’s subrogation rights by reason of a settlement in which sufficient funds were placed in escrow.
DETERMINATION
In summary, the New Jersey accident gave rise to a common-law tort action by Halfpenny against Johnson which was not subject to the no-fault statute in either New York or New Jersey. Despite the no-fault statutes, GEICO’s payment of contractual PIP benefits to Halfpenny pursuant to the additional coverage provision of its New York authorized insurance contract created a subrogated recovery right in GEICO. Halfpenny’s commencement of a tort action in which the GEICO subrogated payments were not included, and the settlement of that claim, did not impair GEICO’s subrogation rights or violate Halfpenny’s insurance contract with GEICO. The general release executed and delivered in settlement does not extinguish GEICO’s subrogation rights. For that reason, and also because the settling tort-feasor and its insurance carrier defendants were on notice of GEICO’s subrogation rights prior to consummation of the settlement and payment of the settlement moneys, the settlement does not bar GEICO from seeking to prosecute its subrogation rights against them in an appropriate new action in a proper forum. Nothing contained herein shall be determinative of any issue in such an action except for the determination that the settlement of the Federal court tort action, and the general release delivered in implementation thereof, do not bar the commencement by GEICO to enforce its subrogation rights against the tort-feasor, and that as of now, the settlement has not resulted in an impairment of GEICO’s subrogation rights by any party defendant hereto.
DECISION
The motion of the defendant Hartford Accident & Indemnity Co. and the cross motions made by the defendants Margaret Halfpenny, Robert A. Johnson, Sr., and General Accident Insurance Group, for summary judgment and dismissal of the complaint, are granted. The cross motion made by the plaintiff Government Employees Insurance Co. is denied. All defendants may enter judgment dismissing the action herein.