Linda **COOPERMAN** and Richard Cooperman, Plaintiffs,

v.

**SUNMARK INDUSTRIES DIVISION OF SUN OIL CO. OF PA., Defendant.**

No. 80 Civ. 4226 (RLC).

United States District Court, S. D. New York.

Dec. 30, 1981.

Farber, Raucher, Goldberg & Ehrlich, P. C., New York City, for plaintiffs; David N. Raucher, New York City, of counsel.

Newman & Schlau, P. C., New York City, for defendant; Carole A. Burns, New York City, of counsel.

## OPINION

ROBERT L. CARTER, District Judge.

In this personal injury action, plaintiffs Linda and Richard Cooperman move to strike five affirmative defenses asserted by defendant, the Sunmark Industries Division of Sun Oil Company of Pennsylvania ("Sunmark").

This lawsuit arose out of an automobile accident which occurred in New Jersey on August 29, 1979. Mrs. Linda Cooperman was injured when the car she was driving collided with a tractor/trailer owned by Sunmark. At the time of the crash, Mrs. Cooperman was en route between two points in New Jersey, the training site and the home office of her employer, World Wide Educational Services. Defendant's truck, registered in New Jersey, was returning to the New Jersey terminal from which it operated, having completed several deliveries within that state. Diversity jurisdiction exists because plaintiffs reside in New York and defendant is a division of a Pennsylvania company doing business in New Jersey.

The fifth and seventh affirmative defenses are quite easily disposed of. Sunmark alleges that plaintiffs' failure to comply with the applicable provisions of New Jersey's no-fault insurance law bars their claims in whole or in part. Under New Jersey insurance law "a nonresident in a non-New Jersey registered or insured vehicle, is not covered by or subject to" the no-fault provisions. *See Government Employees Insurance Company v. Halfpenny*, 103 Misc.2d 128, 425 N.Y.S.2d 212, 216 (Sp. Term N.Y. Co. 1980) (*citing American Hardware Mutual Insurance Co. v. Bradley*, 153 N.J.Super. 72, 379 A.2d 53 (1977)). Since plaintiffs' potential recovery can in no way be affected by the statutes referenced by Sunmark, the motion to strike the defenses based on New Jersey insurance provisions is granted.

Determination of the issues presented by the fourth and sixth affirmative defenses is somewhat more difficult. Plaintiffs' alleged failure to comply with New York's

No

no-fault requirements underlies both defenses. Plaintiffs argue that they are pursuing a common law tort action in no way restricted by the Comprehensive Automobile Insurance Reparations Act, N.Y. Ins. Law § 670 *et seq.* (McKinney 1978 Supp.) Specifically, they note that while the scope of the New York statute is limited to actions upon New York accidents between two covered persons, *id.* § 673(1), the instant action involves a New Jersey collision and only one such person. And, persons who "receive no no-fault benefits . . . retain the tort remedy which existed prior to no-fault enactment." *Halfpenny, supra,* 425 N.Y.S.2d at 216. But Mrs. Cooperman has indeed received substantial sums from her carrier for medical expenses, lost earnings and other losses caused by the accident in question. These payments and the clear language of N.Y. Ins. Law § 672(1)(b) (McKinney 1978 Supp.)[1] persuasively evidence Mrs. Cooperman's entitlement to New York no-fault funds.

■ Abandoning their implausible claim that New York insurance law has no application to this lawsuit, plaintiffs contend that defendant's defense grounded therein must be viewed as an attack solely on the adequacy of their pleadings. Such a restrictive construction of these affirmative defenses is not appropriate. An affirmative defense may allege any matter that would defeat the cause of action, not merely pleading irregularities. *See* Wright & Miller, *Federal Practice and Procedure:* Civil § 1270. But, plaintiffs may still have a point, albeit mischaracterized, in opposition to the defenses in question. Overlooking their reliance on the word "pleadings," it becomes evident that plaintiffs' argument is that § 673(1) is the only insurance provision which speaks of barring the right of recovery for personal injury in some circumstances. Relying on their obvious exemption from those restrictions, plaintiffs infer that no defense of any kind can lie under the no-fault statute.

■ Sunmark counters by attempting to construct a rule that a New York driver may not recover from a possible tortfeasor for any injury covered by her no-fault insurance policy. The proposed standard is derived from the converse of *Halfpenny*'s holding. If the common law action remains for those not entitled to no-fault benefits, the argument goes, it surely must be denied to the extent such insurance payments are received. Thus, the traditional repugnance toward double recoveries underlies defendant's position that a defense to a personal injury action is implicit in the benefit granting provisions of New York's insurance law.

A closer look at the entire framework of New York's car insurance act reveals that defendant's fears of inequity are misplaced. There is no risk of bestowing a windfall upon plaintiffs by permitting them to sue for damages for which they have already been compensated. In fact, rather than forbidding actions by beneficiaries the no-fault regulations contemplate just such proceedings. The no-fault statute was designed as a "sword to gain immediate benefits for the injured," *Yanis v. Texaco, Inc.,* 85 Misc.2d 94, 378 N.Y.S.2d 570, 573 (Sp. Term N.Y. Co. 1975), without regard to fault. Recipients of first party benefits[2] are allowed to recover against noncovered tortfeasors subject to a lien held by the insurer to the extent of its disbursements. *See* N.Y. Ins. Law § 673(2). "Subrogation is the principle which exists to prevent dou-

1. Under this subsection, every New York policy of liability insurance on a motor vehicle must provide for the payment of first party benefits to "the named insured and members of his household, . . . for loss arising out of the use or operation of an uninsured motor vehicle and, *outside of this state, of an insured motor vehicle.*" (emphasis supplied).

2. First party benefits are "payments to reimburse a person for basic economic loss on account of personal injury arising out of the use or operation of a motor vehicle" less several specific deductions. N.Y. Ins. Law § 671(2). "Basic economic loss" means loss of up to fifty thousand dollars per person for all necessary medical expenses, lost earnings, and other reasonable and necessary expenses. *See id.* § 671(1). Mrs. Cooperman is a recipient of first party benefits.

ble recovery by the insured and to force the wrongdoer to bear the ultimate costs." *Scinta v. Kazmierczak*, 59 A.D.2d 313, 399 N.Y.S.2d 545, 548 (4th Dept. 1977). The no-fault law, in effect, merely delays the determination of fault so that it does not interfere with the speedy distribution of benefits to the injured. Since the statute in no way restricts an injured party's right to sue a wrongdoer, and does not limit defendant's liability, the fourth and sixth defenses must also be dismissed.

Plaintiffs seek to strike the first affirmative defense, based upon contributory negligence, on the ground that New York law will apply to the case and there is no potential bar to recovery. The choice between New York and New Jersey comparative negligence standards is irrelevant to the adequacy of the defense at issue. Even under the New York statute championed by plaintiffs, defendant may plead their culpable conduct as an affirmative defense. *See* NYCPLR § 1412.

In the guise of this motion to strike, the parties actually are seeking an early determination of which law will govern the case. While neither state prohibits the defense in question, there is a significant difference in their methods of apportioning damages in a mixed-fault situation. The New Jersey statute creates a floor, barring recovery by any person found more negligent than the person against whom recovery is sought, while simply diminishing damages by plaintiff's percentage of fault if defendant's wrong was the greater. N.J.S.A. 2A:15–5.-1. An action for damages can never be foreclosed by New York law—otherwise recoverable damages are reduced "in the proportion which the culpable conduct attributable to the claimant ... bears" to that which caused the accident. NYCPLR § 1411.

Given the apparent importance of this debate to the efficient resolution of the instant lawsuit, and the full briefing of the conflict of laws theories involved, there is no reason to delay deciding which law will control plaintiffs' degree of recovery.

■ In determining which contributory negligence law is applicable, the court is bound by the choice of law rules of the forum state. *Loebig v. Larucci*, 572 F.2d 81, 84 (2d Cir. 1978) (*citing Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Unfortunately, it is far from easy to deduce how a New York court would resolve the present conflict. There appears to be a slight discrepancy between the views of the New York Court of Appeals and the Second Circuit on the forum's conflicts standards.

The most recent pronouncement by the Court of Appeals was that, while it would no longer automatically select the law of the place of injury, *lex loci delictus* would still apply unless displacing that formula would "advance the substantive law purposes [of the states involved] without impairing the smooth working of the multistate system or producing great uncertainty for litigants." *Neumeier v. Kuehner*, 31 N.Y.2d 121, 335 N.Y.S.2d 64, 70, 286 N.E.2d 454 (1972). Thus, despite the fact that most of the reported decisions opt for plaintiff-protecting New York rules, "*lex loci delicti* remains the general rule to be displaced only in extraordinary circumstances." *Cousins v. Instrument Flyers, Inc.*, 44 N.Y.2d 698, 405 N.Y.S.2d 441, 442, 376 N.E.2d 914 (1978). Where the situs of the accident is not a mere fortuity and a local plaintiff does not merit protection from an unfair and anachronistic foreign regulation, the basic purpose of the *Neumeier* exception is not served by invoking New York law. *Belisario v. Manhattan Motor Rental, Inc.*, 48 A.D.2d 477, 370 N.Y.S.2d 574, 576 (1st Dept. 1975).

The Second Circuit has taken note of New York's apparent trend back to *lex loci*, but has not accepted it. Rather, the court has "see[n] no indication that the highest court of New York has wavered in its determination to afford New York tort plaintiffs the benefit of New York law more favorable than the law of the *lex loci delictus* whenever there is a fair basis for doing so." *O'Connor v. Lee-Hy Paving Corp.*, 579 F.2d 194, 205 (2d Cir. 1978), *cert. denied*, 439 U.S.

1034, 99 S.Ct. 638, 58 L.Ed.2d 696. This reliance on the deeds and not the words of the state court stems from the fact that "except for a federal case which relied heavily on a discredited state case, the strong New York public policy against damage limitations has triumphed over the contrary policies of sister states in every case where a New York domiciliary has brought suit." *Rosenthal v. Warren*, 475 F.2d 438, 443 (2d Cir. 1973), *cert. denied*, 414 U.S. 856, 94 S.Ct. 159, 38 L.Ed.2d 106.

The long list of cases cited by the Second Circuit to show that the Court of Appeals always applies more favorable New York law to benefit its residents consists exclusively of wrongful death actions and guest statute defenses. *See O'Connor, supra* at 205. In both types of actions a strong New York policy against damage limitations is manifest: there is a state constitutional prohibition against wrongful death limitations, N.Y.Const. Art. I, § 16, and the Court of Appeals believes that guest statutes are unfair and anachronistic if applied to New York plaintiffs. *See Neumeier, supra*, 335 N.Y.S.2d, at 68, 286 N.E.2d 454.

Unlike cases considering wrongful death or guest statutes, no strong public policy commands the choice of New York contributory negligence law. Nor would applying New Jersey law constitute an injustice against the New York plaintiffs. The legislatures of New York and New Jersey enacted modern contributory negligence laws to achieve the *same* goal, to relieve plaintiffs from "the harshness of the common law doctrine" which barred recovery even where their own contributory fault was relatively insubstantial. *Van Horn v. William Blanchard Company*, 173 N.J.Super. 280, 414 A.2d 265, 267 (1980) (Pressler, J., dissenting); *Abbate v. Big V Supermarkets, Inc.*, 95 Misc.2d 483, 407 N.Y.S:2d 821 (Sup.Ct. Orange Co. 1978). The statutes only differ in that New Jersey refuses to sanction any recovery for persons more negligent than the subject of their lawsuit. Far from being unfair and anachronistic, New Jersey's version seems to be the more popular nationwide (N.J.S.A. 2A:15–5.1 lists 26 other states with like provisions). It is hard to imagine a strong New York policy against this common comparative negligence statute whose end, if not its means, is embodied in a New York law.

Rather than applying a rigid rule of favoring resident plaintiffs with liberal local laws, New York courts have balanced the interests of competing jurisdictions when faced with conflicts more neutral than those involving guest statutes or wrongful death limitations. Sunmark, though incorporated in Pennsylvania, does a substantial amount of business in New Jersey, and, with respect to the accident in question, its trailer was based in that state and en route from deliveries to its New Jersey terminal. Mrs. Cooperman, while a New York resident, was employed in New Jersey, and, at the crucial moment, was in the process of returning from a New Jersey training center to her employer's New Jersey home base. These circumstances are highly analogous to those which led to the choice of foreign law in *Halfpenny, supra* and *Belisario, supra*.

In the former, a New York court held "beyond question" that New Jersey law governed an action for damages in which plaintiff, a New York resident, was injured in an accident allegedly caused by a New Jersey resident operating a New Jersey registered vehicle in New Jersey. 425 N.Y. S.2d at 216. It was clear that "[n]o considerations of equity, points of contact, public policy or harsh guest statute" existed to "alter the long accepted conflict-of-law rule of lex loci delicti" and that "New Jersey ha[d] as great, if not a greater, 'legitimate interest' in this occurrence than New York." *Id.* (*citing Neumeier, supra* and *Tooker v. Lopez*, 24 N.Y.2d 569, 301 N.Y. S.2d 519, 249 N.E.2d 394 (1969)).

Similarly, *Belisario* concerned an injury to a New York resident employed in New Jersey caused by a tractor driven by a New Jersey licensee and owned by a New York company with its principal place of business in New Jersey. 370 N.Y.S.2d at 575. Because "[e]very significant factor point[ed] to New Jersey as th[e] case's center of

gravity," foreign law was applied to bar the trailer owner's vicarious liability. *Id.* New York contacts far more numerous than those involved in the present case were found insufficient to justify invoking the law of the forum: plaintiff was a local resident; two of the defendants, the owner and lessee of the trailer, were New York corporations; and the vehicle registration and leasing agreement were entered in New York. *Id.* at 576.

*Belisario* is also instructive in another manner as it highlights the fact that no overriding New York policy favors the choice of its own contributory negligence statute in this action. The issue there was whether the trailer owner was vicariously liable to indemnify the tractor owner and the lessee for moneys paid in settlement of plaintiff's claims. As noted above, Mrs. Cooperman's action will inure to the benefit of her insurer to the extent that she recovers for injuries for which reimbursement has previously been received. Thus, although unlike *Belisario* plaintiffs here stand to recover funds additional to those to be transferred to the subrogor, neither action epitomizes the plaintiff-protecting function of New York law. Rather, both concern post-settlement shifting of the burden to bear the costs of plaintiffs' damages.

■ New Jersey is the jurisdiction with the principle relationship to the parties and events, and the greatest concern with the comparative negligence issue raised in this litigation. Not only does that state have the exclusive interest in the activities of defendant, a New Jersey business using state roads and paying local taxes, but it also shares New York's desire to safeguard Mrs. Cooperman's rights. This interest arises from plaintiff's long-term employment at a New Jersey organization, her extensive use of state roads and facilities in the course of that employment and, economically, from the possibility that she may be eligible for New Jersey workmen's compensation. *See* Burns affirmation ex. D. New York's valid concern with its citizen's welfare is somewhat alleviated by the fact that Mrs. Cooperman has been compensated

for her medical expenses, lost income, and other losses and apparently is not about to become a financial burden on the state. In the absence of any significant contacts with the relevant events, and in light of the tenuous New York interest in plaintiffs' incremental recovery and a local insurer's enhanced opportunity to gain reimbursement, I am satisfied that New York's highest court would not give New York law precedence over that of New Jersey in this action.

For the foregoing reasons, plaintiffs' motion to strike is granted as to the fourth, fifth, sixth and seventh affirmative defenses, but is denied as to the first affirmative defense. Furthermore, the issue of contributory negligence will be determined in accordance with New Jersey law.

IT IS SO ORDERED.