Sydney SAVITT and Jack Savitt

v.

CITY OF PHILADELPHIA and Craig E. Davis.

Civ. A. No. 80–1226.

United States District Court,
E.D. Pennsylvania.

Feb. 11, 1983.

Richard E. Schrier, Jacobson & Goldberg, Garden City, N.Y., for plaintiffs.

Armando A. Pandola, Jr., Asst. City Sol., Philadelphia, Pa., for defendants.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

In this litigation, plaintiff Sydney Savitt ("Savitt") a resident of New York, contended that she was seriously injured when hit by a Philadelphia police car unable to come to a timely full stop at a red light when she was crossing Market Street at 10th Street in downtown Philadelphia. Trial was held before a jury from November 2, 1982 to November 10, 1982. Trial on the issue of liability was held from November 2, 1982 to November 4, 1982. On November 4, 1982, the jury reached a verdict and determined that Officer Craig Davis ("Davis"), the driver of the police car, was 65 percent causally negligent and that Mrs. Savitt was 35 percent causally negligent in bringing about the accident. Trial continued before the same jury on the issue of damages. On November 10, 1982, the jury returned a verdict and assessed damages in favor of Mrs. Savitt in the following amounts: $6,500 for past loss of wages; $8,000 for past medical expenses; and $20,000 for past and future pain and suffering. On December 14, 1982, a hearing was held for the purpose of determining what, if any, insurance payments plaintiff had received between July 2, 1979 and November 10, 1982 in connection with her treatment and injuries. For the reasons hereinafter set forth, the Court will enter judgment in favor of the defendants because plaintiff has received or is entitled to receive at least $6,500 in insurance benefits for lost wages and $8,000 in insurance benefits for medical expenses. This Court further finds that the applicable law in this case does not permit it to enter judgment in favor of the plaintiff in connection with her pain and suffering.

## I. The Applicable Law

■ In order to mold the verdict to properly conform to the plaintiff's legal rights of recovery, this Court must first determine the applicable law. Plaintiff contends that this Court should apply the New York no-fault automobile insurance law, N.Y. Insur-

ance Law, § 670 (McKinney 1981), to the instant case and enter judgment in favor of the plaintiff for 65 percent of the damages which the jury determined she had suffered. Defendants contend that this action is not governed by the no-fault laws of either Pennsylvania or New York but by the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S.A. § 8541, et seq. (codified at 53 P.S. § 5311.201 et seq. at the time of plaintiff's injury) (hereinafter "Municipalities Tort Act), and that this statute, as applied to the jury's verdict in this case, bars an award of pain and suffering damages against the City defendants and also requires that the insurance benefits Mrs. Savitt has received or is entitled to receive be deducted from the damage awards assessed for lost earnings and medical expenses. For the reasons hereinafter set forth, the Court has determined that the defendants' contentions are correct and that the Municipalities Tort Act applies in this case.

■ Both parties agree that Pennsylvania law applies to this case. This Court has also determined that Pennsylvania has the most significant relationship with this dispute, both in terms of the weight of contacts between Pennsylvania and the litigation and governmental interest of the forum state in this dispute. A federal court sitting in diversity will apply the choice of law principles of the forum state, *Klaxon Co. v. Stentor Electric Manufacturing Co., Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Melville v. American Home Assurance Co.,* 584 F.2d at 1306, 1308 (3d Cir.1978). In determining the applicable law, Pennsylvania courts employ the "most significant relationship" test of the Restatement (Second) of Conflict of Laws coupled with governmental "interest analysis" to reach a quantitative and qualitative conclusion as to the location of the center of gravity of the matters at issue. *See Melville v. American Home Assurance,* 584 F.2d at 1311; *CBS, Inc. v. Film Corporation of America,* 545 F.Supp. 1382, 1385 (E.D.Pa. 1982). "Interest analysis" involves a qualitative appraisal of the relevant states' poli-

cies with respect to the controversy before the court so that the court may determine the state which has the most significant interest in the dispute. The Restatement (Second) examines the totality of the contact which each state has with various portions of the controversy, counting and weighing those contacts in order to determine which state possesses the "most significant relationship" with the dispute. *Melville, supra,* 584 F.2d at 1311.

In this litigation, both government interest analysis and a counting and weighing of the contacts involved indicates that the law of Pennsylvania should be applied to this litigation. The accident occurred in Pennsylvania. The major defendant, the City of Philadelphia, is a Pennsylvania municipality. The other defendant, Officer Craig Davis, is a Pennsylvania resident and a member of the City's police force. Because the City is a political subdivision of the Commonwealth of Pennsylvania, the state has a strong governmental interest in applying Pennsylvania law to this proceeding. Furthermore, any award of damages to the plaintiff against the City of Philadelphia and probably against police officer Davis would be paid from the proceeds of taxes levied on Pennsylvania residents or those doing business in Pennsylvania. The only factor in this litigation not closely linked to the forum state is plaintiff's state of domicile. Mrs. Savitt is a domiciliary and resident of New York. However, this one contact does not, standing alone, outweigh the many factors showing Pennsylvania law to be the applicable law in this matter.

Plaintiff's counsel maintains, however, that Pennsylvania law directs this Court to apply the no-fault automobile insurance law of New York in this matter. As support for this contention, which the Court rejects, plaintiff cites Pennsylvania's no-fault automobile insurance law, which provides in relevant part

The basic loss benefits available to any victim [of an automobile accident as defined in the no-fault statute] or to any survivor of a deceased victim shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance in effect in the state of domicile of the victim on the date when the motor vehicle accident resulting in injury occurs. If there is no such state no-fault plan in effect or if the victim is not domiciled in any state, then basic loss benefits available to any victim shall be determined pursuant to the provisions of the state no-fault plan for motor vehicle insurance, if any, in effect in the state in which the accident resulting in injury occurs.

The right of a victim or of a survivor of a deceased victim to sue in tort shall be determined by the law of the state of domicile of such victim. If a victim is not domiciled in a state, such right to sue shall be determined by the law of the state in which the accident resulting in injury or damage to property occurs.

40 P.S. § 1009.110(c)(1), (2). In *Swezey v. Home Indemnity Company,* 691 F.2d 163 (3d Cir.1982) the Third Circuit held that Section 1009.110(c) required that a Delaware domiciliary's medical benefits in connection with a Pennsylvania motor vehicle accident be determined by the no-fault statute of Delaware.

Plaintiff contends that this section of the Pennsylvania no-fault statute invokes the New York no-fault statute because the collision between Mrs. Savitt and the police car driven by Officer Davis is a motor vehicle accident within the meaning of the Pennsylvania No-Fault Act and Mrs. Savitt is a domiciliary of New York. While plaintiff is correct in noting that the incident resulting in Mrs. Savitt's injury comes within the definition of a motor vehicle accident set forth in the Pennsylvania no-fault law (*see* 40 P.S. § 1009.103) and that, if the no-fault law governed this case, Mrs. Savitt's New York domicile would invoke the New York No-Fault Act. However, the Pennsylvania statute applicable to this action is not the No-Fault Act but the Political Subdivision Tort Claims Act, 42 Pa.C. S.A. § 8541, *et seq.* (codified at 53 P.S. § 5311.201, *et seq.* in 1979, the time of Mrs. Savitt's accident and injury) (hereinafter "Municipalities Tort Act").

The Municipalities Tort Act is a comprehensive statute enacted in 1976 by the Pennsylvania legislature in response to the Pennsylvania Supreme Court's decision in *Ayala v. Philadelphia Board of Public Education,* 453 Pa. 584, 305 A.2d 877 (1973). In *Ayala,* the state Supreme Court held that the longstanding doctrine of sovereign immunity in Pennsylvania, originally created by the judiciary, was no longer supported by public policy considerations and could be abrogated by the Court. (*See* 453 Pa. at 592, 305 A.2d at 881). The Court left open, however, the question of whether sovereign immunity could be established by the legislature.

In 1976, the state legislature, reading *Ayala* as permitting such legislation, enacted a modified form of sovereign immunity in the form of the Municipalities Tort Act. *See The Political Subdivision Tort Claims Act: Pennsylvania's Response to the Problems of Municipal Tort Liability,* 84 Dickinson L.Rev. 717 (1980). The new act was intended to be a comprehensive statute regulating the conduct of actions brought against Pennsylvania municipalities. *See id.* at 720–30. The act sought to accommodate "two fundamental but divergent interests: the need for the unhampered and effective functioning of cities, towns, and counties, and the equally desirable goal of redressing the injuries of the private individual." *Id.* at 718 (footnote omitted). The Act was held constitutional by the state Supreme Court in *Carroll v. County of York,* 496 Pa. 363, 437 A.2d 394 (1981).

The format of the statute is straightforward. Section 8541 of Title 42 Pa.C.S.A. reimposes the sovereign immunity abrogated in *Ayala* by declaring

> Except as otherwise provided in this subchapter, no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person.

Section 8542 then sets forth the exceptions to the general rule of sovereign immunity for a select category of incidents; 42 Pa.C.S.A. § 8542(b) specifically provides

The following acts by a local agency or any of its employees may result in the imposition of liability on a local agency:

(1) Vehicle liability.—The operation of any motor vehicle in the possession or control of the local agency.

Thus, the Act, while generally re-establishing sovereign immunity in Pennsylvania, sets forth an exception to this immunity where a person is injured by the operation of a municipal vehicle, as occurred to Mrs. Savitt. However, the Act also sets forth a number of limitations upon the damages which Mrs. Savitt, and any other plaintiff falling within one of the exceptions to immunity set forth in 42 Pa.C.S.A. § 8542 may receive. Section 8553 provides:

(a) General rule.—Actions for which damages are limited by reference to this subchapter shall be limited as set forth in this section.

(b) Amounts recoverable.—Damages arising from the same cause of action or transaction or occurrence or series of causes of action or transactions or occurrences shall not exceed $500,000 in the aggregate.

(c) Types of losses recognized.—Damages shall be recoverable only for:

(1) Past and future loss of earnings and earning capacity.

(2) Pain and suffering in the following instances:

(i) death; or

(ii) only in cases of permanent loss of a bodily function, permanent disfigurement or permanent dismemberment where the medical and dental expenses referred to in paragraph (3) are in excess of $1,500.

(3) Medical and dental expenses including the reasonable value of reasonable and necessary medical and dental services, prosthetic devices and necessary ambulance, hospital, professional nursing, and physical therapy expenses accrued and anticipated in the diagnosis, care and recovery of the claimant.

(4) Loss of consortium.

\*   \*   \*   \*   \*   \*

(d) Insurance benefits.—If a claimant receives or is entitled to receive benefits under a policy of insurance other than a life insurance policy as a result of losses for which damages are recoverable under subsection (c), the amount of such benefits shall be deducted from the amount of damages which would otherwise be recoverable by such claimant.

Thus, the Municipalities Tort Act sets forth both liability and damages limitations on an individual's right of recovery against a tortfeasor who is a municipality or municipal employee acting within the scope of his employment.

In this case, the jury found Officer Craig Davis to be 65 percent causally negligent for the accident which injured Mrs. Savitt. Officer Davis is an employee of the City of Philadelphia, a political subdivision within the meaning of the Act. Thus, Mrs. Savitt's right to sue and right to damages is squarely governed by the terms of the Act, a statute specifically enacted to deal with such suits against municipalities. Plaintiff nonetheless contends that this Court should apply New York no-fault automobile insurance law (as referenced by the Pennsylvania No-Fault Act) to this case in spite of the clear applicability of the Municipal Tort Act to this case. As support for this proposition, plaintiff cites the Pennsylvania Statutory Construction Act. However, a close reading of the Statutory Construction Act in light of the facts of this litigation underscores the need to apply the Municipalities Tort Act in this case.

The Statutory Construction Act, 1 Pa.C.S.A. § 1921, *et seq.* states that

(a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

(b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

(1 Pa.C.S.A. § 1921).

Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail.

(1 Pa.C.S.A. § 1933).

Whenever the provisions of two or more statutes enacted finally by different General Assemblies are irreconcilable, the statute latest in date of final enactment shall prevail.

(1 Pa.C.S.A. § 1936).

As the afore-quoted provisions of the Statutory Construction Act make clear, the Municipalities Tort Act is the proper Pennsylvania law to be applied in this action. The Municipalities Tort Act is clear and explicit in its language, which re-establishes the sovereign immunity abrogated by *Ayala* subject to the specific exceptions delineated in the Act itself. The Act effectuates the intent of the Legislature, which was to set forth a codified law governing suits against municipalities rather than to allow munici-

pal defendants to be treated as other defendants, which would have been the situation had the legislature not passed the Act.

The Act was written under circumstances of the judicial abolition of sovereign immunity and resulted from that occasion and the legislature's perceived necessity to reestablish the doctrine in a modified form similar to that found in the Federal Tort Claims Act. By establishing the Municipalities Tort Act, the legislature sought to avoid the mischief of substantial monetary judgments being entered against political subdivisions as the result of thousands of lawsuits encompassing a myriad of topics. Rather than expose its municipalities to potential financial ruin, and rather than allowing the cities and towns to seek to establish new, narrower, common law forms of sovereign immunity through the process of litigation in Pennsylvania courts, the legislature determined that the interests of both the municipalities and potential plaintiffs would best be served by the enactment of a comprehensive statute. Thus, the language of the Municipalities Tort Act and its legislative history and background, as well as the rules of statutory construction, clearly show that this Act should be applied when municipalities are sued for tortious conduct such as that found in this case.

Although there is no Pennsylvania Supreme Court decision that has addressed the question of whether the Municipalities Tort Act applies when a municipality is a defendant in an automobile negligence action ordinarily governed by the state no-fault statute, this Court, relying in part upon the Pennsylvania Supreme Court decision of *Carroll v. County of York,* 496 Pa. 363, 437 A.2d 394 (1981), has concluded that the state Supreme Court would, if presented with the facts of this case, hold that the Municipalities Tort Act applies.

This Court has, of course, considered *Swezey v. Home Indemnity Company,* which held that, where the Pennsylvania No-Fault statute was to be applied, Section 1009.110(c) of the Pennsylvania statute requires the Court to apply the no-fault law of the accident victim's domicile in cases where the victim is a domiciliary of a state with a no-fault plan in effect. However, for the reasons heretofore set forth, this Court has determined that the Pennsylvania no-fault statute is not applicable to this case but that the Pennsylvania Municipalities Tort Act governs this litigation. As will be described hereinafter, the Court notes that the Municipalities Tort Act and the New York no-fault law (as referenced by the Pennsylvania no-fault statute) are inconsistent in several respects and the Court must, pursuant to the command of the Pennsylvania Statutory Construction Act, resolve this inconsistency in favor of the Municipalities Tort Act because that statute postdates the no-fault law and was drafted to deal specifically and completely with the question of tort actions brought against municipalities.

To illustrate the difference in relief available to the plaintiff, the Court will briefly discuss her available remedies pursuant to the New York no-fault law. Plaintiff's remedies pursuant to the Municipalities Tort Act have been set forth at pp. 324–325, *supra.* Although there appear to be no Pennsylvania cases interpreting the New York no-fault law, the language of the statute and the New York cases applying the statute indicate that plaintiff would be entitled to 65% of the jury's damage verdict concerning past lost earnings, past medical expenses, and pain and suffering.

The parties have tried this case on the assumption that the City police car involved in the accident was a "covered" vehicle within the terms of both the Pennsylvania and New York no-fault statutes. The Pennsylvania no-fault statute requires that all motor vehicles licensed in the state be covered by financial security sufficient to satisfy the basic loss benefits available to accident victims under the state no-fault statute. *See* 40 P.S. § 1009.104. Section 1009.104(c) allows governments to satisfy this requirement by lawfully obligating themselves to pay judgments rather than obtaining a formal insurance policy through a private insurance company, as do most motorists. It thus appears that, by virtue

of satisfaction of the financial security requirements of Pennsylvania no-fault law, the City is a "covered person" within the meaning of the New York No-Fault Act. *See* New York Ins.Law § 671(10) (McKinney 1981).

Section 673(1) of the New York no-fault law sets forth the legal remedies available to a New York plaintiff covered by a no-fault policy when such a person is involved in an accident in New York with another no-fault insured driver ("covered person"). In such a case, Section 673(1) alters the common law right of action available to an accident victim. At common law, of course, an accident victim may commence a suit for all damages that proximately result from the defendant's negligence. Section 673(1) provides, however, that where both plaintiff and defendant are "covered persons" under the New York statute and the accident in question occurs in New York, the plaintiff may recover only for noneconomic loss (*e.g.*, pain and suffering) where a serious injury is suffered and may only recover damages for lost earnings and medical expenses where such damages exceed $50,000.[1] Pursuant to Section 672(2) of the New York no-fault law, the plaintiff, as one covered by no-fault insurance, is entitled to receive $50,000 in compensation for lost wages and medical expenses, which result from a motor vehicle accident in New York or in any other state in the union. Thus, Mrs. Savitt's no-fault insurer must provide coverage to her for any lost earnings or medical expenses that she incurred as a proximate result of the accident.

Section 672(2) of the New York no-fault law provides that, where a plaintiff covered by no-fault insurance is injured by the negligence of a "non-covered" person, the plaintiff retains her common law cause of action in tort. *See also Cooperman v. Sunmark Industries, Inc.,* 529 F.Supp. 365, 367–68 (S.D.N.Y.1981); *GEICO v. Halfpenny,* 103 Misc.2d 128, 425 N.Y.S.2d 212, 215–16 (Sup.Ct.1980). Therefore, if the city were determined to be a non-covered person, Section 673(2) of the New York no-fault law allows her to bring an action against the City for the full amount of her claimed damages, both economic and non-economic. Section 673(2) further provides that any insurer who has provided compensation to Mrs. Savitt may seek reimbursement of that compensation from any court judgment in her favor. Where a New York resident covered by a New York no-fault policy has been injured by a non-covered person, she retains her full common law range of judicial remedies. *See Cooperman v. Sunmark Industries, Inc.,* 529 F.Supp. 365 (S.D.N.Y.1981); *GEICO v. Halfpenny,* 103 Misc.2d 128, 425 N.Y.S.2d 212 (Sup.Ct.1980).

Section 673 of the New York no-fault law is silent, however, concerning the situation that exists in this case where a plaintiff "covered person" (Mrs. Savitt) has brought suit against a defendant "covered person" (the City) for an accident that occurred outside New York. As heretofore noted, Section 673(1), which governs actions between covered persons, by its terms applies only to accidents which occur in New York. The parties have not briefed this issue nor taken a position as to whether, should this

---

1. Section 673 of the New York no-fault law provides that

[I]n any action by or on behalf of a covered person against another covered person for personal injuries arising out of negligence in the use or operation of a motor vehicle in this state, there shall be no right of recovery for non-economic loss, except in the case of a serious injury or for basic economic loss.

Section 671(4) of the New York law defines serious injury as, *inter alia,*

significant limitation of use of a body function or system; or a medically determined injury or impairment of a non-permanent nature which prevents the injured person from performing substantially all of the material acts which constitute such person's usual and customary daily activities for not less than ninety days during the one hundred eighty days immediately following the occurrence of the injury or impairment.

The evidence presented at trial indicates that Mrs. Savitt has met the threshold requirement for bringing an action for non-economic loss (*e.g.,* pain and suffering) against a covered person and may bring such an action against the City, even if the City were determined to be a covered person within the meaning of New York no-fault law.

Court apply the New York no-fault law, plaintiff may prosecute only the limited, "no-fault" tort action provided in Section 673(1) or whether she retains her complete "common law" tort action, as would be the case if the City were not a covered person (*see* Section 673(2)). Since the Court has determined that it must apply the Municipalities Tort Act in apportioning damages, the Court need not now decide whether Mrs. Savitt's cause of action against the City is governed by "common law" boundaries or must satisfy Section 673(1)'s "no-fault" threshold for damages recovery. However, it seems to this Court that since the New York no-fault law is silent, it cannot be read as abrogating plaintiff's common law cause of action. *See Cooperman v. Sunmark, supra; GEICO v. Halfpenny, supra.* Where the New York legislature desired to alter the common law cause of action available to an accident victim, it showed itself perfectly capable of doing so in the clear language of Section 673(1), which addressed itself only to accidents occurring in New York. The legislature declined to enact a similar alteration of the common law concerning accidents that occur outside New York. The inevitable conclusion would appear to be that the New York legislature did not wish to alter the plaintiff's common law right of action where the motor vehicle accident occurred outside New York.

Regardless of whether the plaintiff would, under the New York no-fault law, possess a limited no-fault right of action or a complete common law right of action, the relief available to Mrs. Savitt pursuant to the New York no-fault law differs significantly in many respects from that available to her under the Pennsylvania Municipalities Tort Act.

If plaintiff were to obtain an award of damages pursuant to the New York no-fault law, any judgment would not be reduced by the insurance benefits she has received. However, the Municipalities Tort Act requires that any insurance payments received by the plaintiff be deducted from any such damages award before judgment is entered. *See* 42 Pa.C.S.A. § 8542. The

two laws are thus in conflict regarding the damages that Mrs. Savitt may receive in a court judgment in this action.

The Municipalities Tort Act and the New York no-fault law also conflict regarding whether Mrs. Savitt may recover damages for pain and suffering in this case.

The New York no-fault law permits such recovery by a plaintiff injured in a vehicular accident whenever the plaintiff has incurred more than $1,500 in medical expenses, an indication that the injury was sufficiently serious to suggest that the plaintiff's pain and suffering claim has merit, or when the injury meets the definition of serious injury set forth in § 672(2) (*see* pp. 325–326, *supra*). However, the Pennsylvania Municipalities Tort Act provides that a plaintiff may recover damages for pain and suffering only when she has suffered death, permanent disfigurement, permanent dismemberment, or the "permanent loss of a bodily function" as well as incurring medical expenses of more than $1,500 in connection with the injury. The existence of this higher threshold to recovery under the Municipalities Tort Act is of more than academic note in this case. Interrogatory No. 3 to the jury asked

> Do you find from a preponderance of the evidence that Sydney Savitt, as a proximate result of the accident, suffered a permanent loss of a bodily function?

The jury answered "No," to this question. In its charge, this Court had instructed the jury that

> A permanent loss of a bodily function means that the plaintiff, as a [proximate] result of the accident, can no longer perform a physical act or acts which she was capable of performing prior to injury proximately resulting from the accident, and that this loss of bodily function is permanent, that is, that this loss of bodily function will exist for the remainder of her [Mrs. Savitt's] life.

The jury was thus adequately informed as to the meaning of the term "permanent loss of a bodily function" and, based on the evidence presented at trial, concluded that

Mrs. Savitt had not suffered a permanent loss of a bodily function as a result of the accident. In its points for charge and a supporting memorandum, defendants had argued that the jury should be instructed that plaintiff must have lost a limb or portion of her body in order to have sustained a loss of bodily function within the meaning of the statute. The Court rejected this reasoning. Had the legislature intended that the term "loss of a bodily function" have the meaning sought by defendants, the words "permanent dismemberment" and "permanent disfigurement" in the same section (42 Pa.C.S.A. § 8553) of the statute would be meaningless. Thus, the Court instructed the jury regarding the term "loss of a bodily function" in a fair manner that was, if anything, favorable to the plaintiff.

Plaintiff contends, however, that despite the clear statutory threshold which the jury found not to be met by the plaintiff, she should nevertheless receive an award for pain and suffering because of the jury's answers to interrogatories Nos. 4 and 4a which read

> Question No. 4: Do you find from a preponderance of the evidence that Sydney Savitt incurred pain and suffering as a proximate result of the accident?
>
> Question No. 4a: In what amount do you assess damages for Sydney Savitt's pain and suffering (both past and future) incurred as a proximate result of the accident?

■ The jury answered "Yes," to Question No. 4 and "$20,000" to Question No. 4a. Plaintiff thus argues that, because the jury found Mrs. Savitt to have suffered $20,000 worth of pain and suffering, this Court should award these damages to her in spite of the jury's finding that she did not satisfy the statutory prerequisites for receiving damages for pain and suffering. The Court cannot vitiate the obvious language and intent of the Municipalities Tort Act in such a manner. While it is true that the jury did not know what the legal effect of its answer to Question 3 would be, this does not diminish the importance of the jury's finding, in response to Interrogatory No. 3, that Mrs. Savitt did not incur a "permanent loss of a bodily function." She is, therefore, because of the jury's determination and the clear language of the Municipalities Tort Act, barred from receiving damages for pain and suffering.

■ The Municipalities Tort Act, as written at the time of Mrs. Savitt's accident, 53 P.S. § 5311.404, provided that "no interest shall accrue in any action prior to any entry of judgment against a municipality." This portion of the Municipalities Tort Act was eliminated when the Act was recodified at 42 Pa.C.S.A. 8541, et seq. and was incorporated into the judicial code. Section 333 of the Judicial Repealer Act inter alia, transferred the Government Tort Act from Title 53 of the Code to Title 42 of the Code. Thus, application of the Government Tort Act as it was written at the time of the accident to this litigation, precludes an award of prejudgment interest to Mrs. Savitt. If the New York no-fault act were applicable to this action, Pennsylvania Civil Procedure Rule 238 would apply to this action. Rule 238 provides that, unless otherwise prohibited, successful litigants shall have the damage award increased at the rate of 10 percent per annum for the time between commencement of the action and the judgment unless the unsuccessful party has made an offer of settlement and the damages awarded do not exceed the settlement offer by 125 percent. Rule 238 has been held to be applicable as a matter of state substantive law in diversity actions in this Court where Pennsylvania substantive law is to be applied. *See Peterson v. Crown Financial Corp.,* 661 F.2d 287 (3d Cir.1981); *Jarvis v. Johnson,* 668 F.2d 740 (3d Cir. 1982). Here, again, the Municipalities Tort Act and New York no-fault law diverge in an irreconcilable manner, underscoring the need to apply the Act in consistent manner in determining the damages that may be received by Mrs. Savitt.

The Court will therefore enter an Order molding the jury's verdict according to the applicable law in this case. The Court will not award plaintiff any damages for pain and suffering. The jury's damage awards for lost earning capacity and medical expenses will be reduced based on the evidence presented at the December 14 hearing.

At the December 14 hearing, the parties stipulated that Mrs. Savitt has already received more than $12,000 in workmen's compensation benefits during the period from July 7, 1979 to September 1, 1981, pursuant to a policy issued to her employer. This Court has determined that the plaintiff has received these workmen's compensation benefits pursuant to a "policy of insurance" within the meaning of the Pennsylvania Municipalities Tort Act.[2]

According to the uncontradicted evidence presented at that hearing, Mrs. Savitt is covered by a no-fault automobile insurance policy that conforms to the minimum requirements of the New York no-fault statute. Thus, she is entitled to receive a minimum of up to $50,000 in compensation for lost earnings and medical expenses resulting from the accident. As heretofore noted, the jury awarded Mrs. Savitt $6,500 for lost earnings and $8,000 for medical expenses resulting from the accident. Pursuant to the Pennsylvania Comparative Negligence Act, 42 Pa.C.S.A. § 7102, she would be entitled to recover 65% of these amounts in damages if she were uninsured. However, since she is entitled to receive this compensation from her insurer, the Municipalities Tort Act requires this Court to deduct the insurance benefits from her award, resulting in a net award of zero dollars. Since plaintiff is not entitled to any monetary judgment in this action, the Court will enter judgment in favor of defendants. An appropriate Order will be accordingly entered.

### ORDER

AND NOW, this 11th day of February, 1983, trial having been held in this matter from November 4, 1982 to November 10, 1982, the jury having found defendant Craig E. Davis 65 percent causally negligent and plaintiff Sydney Savitt 35 percent causally negligent, and having found damages to plaintiff Sydney Savitt in the amount of $6,500 for past loss of earning capacity, $8,000 for medical expenses incurred as a proximate result of the accident, and $20,000 for pain and suffering incurred as a proximate result of the accident, the Court having held a hearing on December 14, 1982 for the purpose of determining the insurance benefits which plaintiff has received or is entitled to receive, the Court having determined for the reasons set forth in this Court's Memorandum of February 11th, 1983 that the jury's verdict must be molded pursuant to the Pennsylvania Political Subdivision Tort Claims Act,

IT IS HEREBY ORDERED: Judgment is ENTERED in favor of defendants the City of Philadelphia and Craig E. Davis and against plaintiff Sydney Savitt, each party to bear its own costs.

---

2. The New York Workmen's Compensation Act, under which Mrs. Savitt has received these benefits, refers to the state's workmen's compensation law as an insurance scheme throughout the law. *See generally,* N.Y. Compensation Law §§ 1–49 (McKinney's 1981). Mrs. Savitt's employer maintains an insurance policy through Chubb & Sons, Inc. in order to satisfy the workmen's compensation obligations imposed on an employer pursuant to New York law. Furthermore, similar language in the New Jersey government tort act has construed workmen's compensation benefits to be insurance benefits. *See Travellers Insurance Co. v. Collella,* 169 N.J.Super. 412, 404 A.2d 1250, 1251 (1979).