189 N.J. Super. 33 (1983)
458 A.2d 528
KEITH LATTIMER, PLAINTIFF,
v.
MARK D. BOUCHER, ETC., ET AL., DEFENDANTS. and ALLEYNE SKINNER ET ALS., PLAINTIFFS,
v.
MARK D. BOUCHER, ETC., ET AL., DEFENDANTS. and CARLEY SKINNER, ETC., ET AL., PLAINTIFFS,
v.
MARK D. BOUCHER ET ALS., DEFENDANTS. and JANICE DYKES ET AL., PLAINTIFFS,
v.
MARK D. BOUCHER ET ALS., DEFENDANTS.
Superior Court of New Jersey, Law Division Atlantic County.
March 4, 1983.
*34 Paul B. Hirsch for plaintiff Keith Lattimer (Pearlman, Krunholz, Horn & Shechtman, attorneys).
Marc N. Isenberg for plaintiffs Janice Dykes, Richard Dykes, Alleyne Skinner, Denise Skinner and Gregory Williamson.
Robert A. Bresin for plaintiffs Carley Skinner, Rosie Skinner and Mae Skinner (Bresin & Callahan, attorneys).
*35 Timothy M. Crammer for defendant Lucky 7 Bar (Horn, Kaplan, Goldberg & Gorny, attorneys).
Michael A. Pirolli for defendant Paul Reed (Horuvitz, Perlow, Morris & Baker, attorneys).
WILLIAMS, J.S.C.
This is an action for injuries suffered in an automobile accident on January 26, 1980, in Galloway Township. Plaintiffs are New York residents whose automobile was struck by defendant Boucher's truck. Plaintiffs' car was registered in New York and insured by a New York policy; Boucher is a New Jersey resident whose truck was registered and insured in this State. Boucher's codefendants include the bar where he was purportedly drinking before the accident.
Plaintiffs intend to place the amount of their medical expenses and lost wages into evidence at trial as a compensable element of damages, even though these amounts are either paid or collectible as no-fault benefits under their New York policy. Defendants have made a motion in limine, contending this evidence is inadmissible. Both parties concede that, had this accident involved two vehicles registered and insured in New Jersey, or had it occurred in New York and involved two vehicles registered and insured there, evidence of medical expenses and lost wages would have been inadmissible under each state's no-fault statute. N.J.S.A. 39:6A-12; N.Y.Ins.Law, §§ 673.1, 671.1. The question posed by this case, then, is whether New Jersey law or public policy requires the same evidentiary prohibition when the action involves a New Jersey accident, a New York plaintiff and a New Jersey defendant. For the reasons set forth below, this court holds that such is not required.
First, the evidentiary exclusion of N.J.S.A. 39:6A-12 does not apply directly to this case. That section reads:
Evidence of the amounts collectible or paid pursuant to sections 4 and 10 of this act to an injured person is inadmissible in a civil action for recovery of damages for bodily injury by such injured person.
*36 Sections 4 (N.J.S.A. 39:6A-4) and 10 (N.J.S.A. 39:6A-10) of the act provide for payment, regardless of fault, of personal injury protection (PIP) benefits to persons injured in an accident involving an automobile, with mandatory minimum coverage for all reasonable medical expenses and $100 a week up to $5,200 in lost wages. However, these two sections, read in conjunction with N.J.S.A. 39:6A-3, extend PIP coverage only to "automobiles registered or principally garaged" in New Jersey. Stewart v. Nationwide Ins. Co., 171 N.J. Super. 457, 462-463 (App.Div. 1979). Benefits are therefore "collectible or paid pursuant to sections 4 and 10" only when a New Jersey vehicle and a PIP insurance policy are involved. The medical expenses and lost wages in the instant case were paid under a New York policy on a New York vehicle. Accordingly, the exclusionary mandate of § 12 does not apply.
Defendants argue, however, that § 12 is made applicable here by N.Y.Ins.Law, § 672.5, which provides:
Every owner's policy of liability insurance issued in satisfaction of articles six or eight of the vehicle and traffic law, shall also provide, when a motor vehicle covered by such policy is used or operated in any other state ..., insurance coverage for such vehicle at least in the amount required for such vehicle by the laws of such other state....
Defendants read this provision to incorporate all New Jersey coverage requirements into plaintiffs' policy, so that their no-fault benefits were "paid pursuant to section 4" and are therefore excludable under § 12. Plaintiffs contend the provision simply guarantees that residents injured in their home state by New York drivers receive liability coverage at least equal to that mandated by their legislatures. A close reading of the statute suggests plaintiffs' interpretation is correct.
Stewart v. Nationwide Ins. Co., supra, cited by both parties in support of their respective positions, is not pertinent, since it turned on the court's interpretation of specific provisions in Pennsylvania law. See 171 N.J. Super. at 465. A more relevant case is Government Empl. Ins. Co. v. Halfpenny, 103 Misc.2d 128, 425 N.Y.S.2d 212 (Sup.Ct. 1980), in which the court held that a New York resident, injured in New Jersey by a New Jersey *37 driver, was neither subject to nor covered by New Jersey no-fault law; instead, the plaintiff's remedy was held to be a common-law tort action that included recovery for medical expenses. Id. at 133, 425 N.Y.S.2d at 216. Halfpenny makes no reference to § 672.5 of the New York law, although it was in effect at the time of the 1975 accident. Additionally, New York amended its no-fault statute in 1977 to make benefits available to New York residents injured in out-of-state accidents. See Hansen v. Zitti, 106 Misc.2d 354, 355, 431 N.Y.S.2d 620, 621 (Sup.Ct. 1980). If "insurance coverage" in § 672.5 meant what defendants say it meant, that amendment would not have been necessary.
Moreover, § 672.5 is framed in terms of liability insurance and refers specifically to the "amounts" of coverage in sister states. The sections of the vehicle and traffic code referred to in § 672.5 deal with third-party liability coverage, not no-fault benefits. The section is thus most naturally read as a guarantee of liability coverage for non-New York residents. To read it as affecting plaintiffs' own no-fault benefits would be to turn plaintiffs' policy into a sort of "floating" provision for benefits at least equal to those mandated by whatever state plaintiffs happened to be visiting. Even if one passes over the troublesome question of whether another state's benefits are "superior" to New York's, it is difficult to imagine New York requiring such a policy, or any insurance company writing it. See American Hardware Mut. Ins. Co. v. Bradley, 153 N.J. Super. 72, 78 (App.Div. 1977).[1]
Defendants next argue that, even if § 672.5 does not subject plaintiffs to N.J.S.A. 39:6A-4 and 12, the strong public policy in both states against double recovery should preclude introduction into evidence of plaintiffs' medical expenses and *38 lost wages. It is true that both New York and New Jersey strongly disapprove of double recovery by accident victims. Aetna Ins. Co. v. Gilchrist Bros., Inc., 85 N.J. 550, 562 (1981); Cirelli v. Ohio Cas. Ins. Co., 72 N.J. 380, 387 (1977); Scinta v. Kazmierczak, 59 App.Div.2d 313, 316, 399 N.Y.S.2d 545, 548 (App.Div. 1977). But double recovery is a danger in this case only if plaintiffs' New York insurance carrier does not have subrogation rights to any recovery by plaintiffs of medical expenses and lost wages. Under New York law, plaintiffs' carrier is entitled to reimbursement should plaintiffs recover those expenses in this suit.
N.Y.Ins.Law § 673.2, provides that, in an action by a "covered person" against a "non-covered person," the covered person's carrier has a lien against any recovery to the extent of benefits paid or payable to the insured. Moreover, should the insured fail to commence such an action within two years, the carrier succeeds to a cause of action against the noncovered person for the amount of benefits paid. The terms of this statute control any action in New Jersey courts, since New York was the jurisdiction in which the contract of insurance was made. State Farm Mut. Ins. v. Simmons Estate, 169 N.J. Super. 133 (App.Div. 1979).
Defendants attempt to avoid § 673.2 by arguing that Boucher is a "covered person" under New York law. They read "covered person" to mean anyone with coverage equivalent to New York's minimum liability requirements. For several reasons this interpretation is untenable. First, as a matter of statutory construction, "covered person" seems to refer only to someone insured by a New York carrier. See N.Y.Ins.Law § 671.10; N.Y.Veh. & Traf.Law §§ 311.3, 311.4. Second, the reading makes no sense once one concedes that plaintiffs are not subject to the evidentiary exclusion of the New Jersey no-fault statute. If plaintiffs can plead and recover their no-fault benefits, and plaintiffs' carrier cannot recoup them, then plaintiffs will receive the double recovery windfall the statute seeks to eliminate.
*39 In fact, the New York law was intended to allow subrogation in these circumstances. See Cooperman v. Sunmark Ind., 529 F. Supp. 365, 367 (S.D.N.Y. 1981), a federal diversity case with a factual setting similar to the instant action. Defendant in Cooperman, a New Jersey corporation, argued that the New York plaintiff was barred by the double-recovery principle from recovering any amounts already received as no-fault benefits. The court noted that New York had abrogated the common-law right of action for no-fault benefits only for in-state cases. See N.Y.Ins.Law § 673.1. Outside of that category, the common-law action was still viable, and subrogation was the
... "principle that exists to prevent double recovery by the insured and to force the wrongdoer to bear the ultimate costs." The no-fault law, in effect, merely delays the determination of fault so that it does not interfere with the speedy distribution of benefits to the insured. [Cooperman, supra, 529 F. Supp. at 367-368, citing Scinta v. Kazmierczak, supra, 59 App.Div. at 316, 399 N.Y.S.2d at 548]
Implicit in this holding is the determination that the New Jersey defendant was a "non-covered" person under the act. See Halfpenny, supra, 103 Misc.2d at 133, 425 N.Y.S.2d at 217.
When an out-of-state driver is injured by a resident tortfeasor, subrogation functions to ensure that carriers in the victim's state do not subsidize the cost of insurance in the state where the accident occurred.
Had the situation of this action been reversed, so that a New Jersey resident was injured in New York, New Jersey would permit subrogation. That was precisely the issue in Cirelli, where the Supreme Court upheld the New Jersey carrier's right of reimbursement, against both its insured and the New York vehicle, for an amount equal to PIP benefits. 72 N.J. at 388.[2] In Cirelli the court carefully distinguished between the policies affecting the elimination of subrogation in accidents involving *40 New Jersey vehicles and those involving out-of-state automobiles. In the former situation, eliminating subrogation could reduce costs and increase efficiency, and any inequality of losses among carriers would eventually even out, or could be mitigated by the rate-making process. Id. at 386-387. See Prudential Prop. & Cas. Ins. v. New Hampshire Ins., 167 N.J. Super. 537, 540 (Law Div. 1979); Eckmeyer v. Colburn, 138 N.J. Super. 164, 169 (Law Div. 1975). In the latter instance, however, "the predicate for the PIP provisions eliminating subrogation does not exist." Disallowing reimbursement might not only allow liability carriers to reap the unjustifiable benefit of a subsidy, but also actually promote double recovery. Cirelli, supra, 72 N.J. at 387-388. See, also, Aetna Ins. Co., supra, 85 N.J. at 564. The same policy considerations obtain in the instant case. To read the New York statute as denying subrogation rights would be to confer on New Jersey carriers the "unjustifiable benefit" the court in Cirelli found objectionable.
The Supreme Court's recent decision in Aetna Ins. Co. v. Gilchrist Bros., Inc., supra, does not contradict this analysis. In Aetna the court held that N.J.S.A. 39:6A-12 eliminated subrogation rights of a New Jersey no-fault carrier whose insured had been struck by a commercial tractor-trailer not subject to the no-fault statute. The court reasoned that the absolute language of § 12 deprived the insured of any right of recovery for PIP benefits, and that the carrier, as subrogee, could have no greater rights than its insured. 85 N.J. at 562-565. The effect of this decision is that no subrogation rights exist in a New Jersey accident where PIP benefits are paid, even when the tortfeasor is not covered by no-fault insurance. Thus, if a New Jersey resident is injured by an out-of-state driver in New Jersey, the victim's insurer cannot recover the disbursed PIP benefits from the tortfeasor  a result that contradicts the policy arguments against subsidization relied on in Cirelli. See Aetna Ins. Co., 85 N.J. at 568-569 (Sullivan, J., dissenting). The court acknowledged that difficulty but, relying on what it called the clear and unmistakable language of N.J.S.A. 39:6A-12, said the matter *41 was a legislative decision the wisdom of which was beyond its purview. It also distinguished Cirelli on the ground that the plaintiff there, suing in New York, was not subject to the restrictions of § 12. 85 N.J. at 564-565.
In the instant case, as in Cirelli, the unambiguous language of § 12 does not apply. Plaintiffs, New York insureds, have received no PIP benefits; they have instead been compensated under the New York no-fault law. The reasoning of the Aetna case, based on the absolute command of § 12 where PIP benefits have been paid, is not apposite. This court is free to look to the policy considerations enumerated in Cirelli and to apply them to these facts. Doing so would foster a sensible reciprocal accommodation between the two states' no-fault statutes and would pose no danger of double recovery by plaintiffs. Moreover, such a course would in no way conflict with the objectives of New Jersey's no-fault law. See Fitzgerald v. Wright, 155 N.J. Super. 494 (App.Div. 1978); Hoglin v. Nationwide Mut. Ins. Co., 144 N.J. Super. 475 (App.Div. 1976).
Accordingly, defendants' motion in limine to preclude introduction of the amount of plaintiffs' medical expenses and lost wages at trial will be denied.
NOTES
[1] The court in American Hardware also spoke in passing of § 672.5 in terms suggesting it conceived of the statute as a method of insuring that out-of-state "victims" injured by New Yorkers get the same coverage they would under their own laws. See 153 N.J. Super. at 74, n. 1.
[2] Cirelli involved a pre-1975 accident, so that subrogation under N.J.S.A. 39:6A-9 still existed, but the court made it clear that its reasoning applied to post-1974 accidents as well. 72 N.J. at 386. See, also, Melick v. Stanley, 174 N.J. Super. 271, 278 (Law Div. 1980).