39 A.3d 947 (2011)
425 N.J. Super. 110
Cecilia WISE, Plaintiff,
v.
Cynthia MARIENSKI, Dawn Celli, John Does 1-10, and ABC Corporations 1-10 (said names being fictitious). Defendants.
Nina Wise, Plaintiff,
v.
Cynthia Marienski, ABC Corporations 1-10 (unknown corporations, bars and/or liquor establishments responsible for the incident in question) and John Does 1-10 (unknown individuals responsible for the incident in question), Defendants.
Docket Nos.:L-2741-09/L-3397-09 (Consolidated) CIVIL ACTION
Superior Court of New Jersey, Law Division, Union County.
Decided June 16, 2011.
*948 Howard N. Wiener, Rahway, for plaintiff Cecilia Wise (Tobin, Koster, Reitman, Greenstein, Caruso, Wiener & Konray, attorneys).
Nicholas Scutari, for plaintiff Nina Wise.
Gregory F. McGroarty, for Defendant Cynthia Marienski (Litvak & Trifiolis, Cedar Knoll, attorneys).
KENNETH J. CRISPIN, P.J.Cv.
In this personal injury matter, defendant Cynthia L. Marienski has moved for an order barring plaintiffs Cecilia Wise ("Cecilia") and Nina Wise ("Nina") (collectively, "plaintiffs") from entering evidence of their outstanding medical expenses at the time of trial, pursuant to N.J.S.A. 39:6A-12. For the following reasons, this court holds that N.J.S.A. 39:6A-12 does not preclude recovery of medical expenses beyond those collectible or paid under the several "Standard" Personal Injury Protection ("PIP") plans. Evidence pertaining to plaintiffs' medical expenses above those payable by PIP is, therefore, admissible. Accordingly, defendant's motion is denied.
The facts of this case (as opposed to the legal issues) are simple. On September 22, 2007, the parties were involved in an automobile accident, in which a vehicle driven by defendant rear-ended Cecilia's car, which Cecilia was driving at the time and in which Nina, Cecilia's sister, was riding as a passenger. Nina is not a licensed driver in the State of New Jersey, and is not a named insured on Cecilia's policy, or a resident of her household. As a result of the accident, Cecilia suffered injuries to her neck, back and both of her knees. Nina suffered injuries as well. Cecilia subsequently underwent treatment for her injuries, including surgery to repair her left knee. Cecilia's automobile insurance policy provides for PIP coverage for economic damages of up to $15,000, which has been exhausted. As a result, Cecilia has $21,820 in outstanding medical bills and Nina has $26,212.96 in outstanding medical bills. Defendant now seeks to bar from trial evidence of these outstanding bills.

DISCUSSION

Part I
In 1972, the New Jersey Legislature enacted the New Jersey Automobile Reparation Reform Act (the "No Fault Act"), L. 1972 c. 70, codified as N.J.S.A. 39:6A-1 to -18. See Cynthia M. Craig & Daniel J. Pomeroy, New Jersey Auto Insurance Law 11 (Gann 2011) ("Craig & Pomeroy 2011"). Under this legislation, "all insurance policies written for private passenger vehicles were required to provide enumerated [PIP] benefits to certain classes of persons without regard to who was at fault in causing the accident. The primary object of this reform legislation was to get needed money to injured people quickly." Ibid.
N.J.S.A. 39:6A-12, entitled, "Inadmissibility of evidence of losses collectible under personal injury protection coverage," and last amended by L. 2003, c. 89, § 55, states, in pertinent part:

*949 [E]vidence of the amounts collectible or paid under a standard automobile insurance policy pursuant to [N.J.S.A. 39:6A-4]. . . to an injured person, including the amounts of any deductibles, copayments or exclusions, including exclusions pursuant to [N.J.S.A. 39:6A-4.3], otherwise compensated is inadmissible in a civil action for recovery of damages for bodily injury by such injured person. The court shall instruct the jury that, in arriving at a verdict as to the amount of the damages for noneconomic loss to be recovered by the injured person, the jury shall not speculate as to the amount of the medical expense benefits paid or payable by an automobile insurer under personal injury protection coverage payable under a standard automobile insurance policy pursuant to [N.J.S.A. 39:64]. . . .
Nothing in this section shall be construed to limit the right of recovery, against the tortfeasor, of uncompensated economic loss sustained by the injured party.
Defendant asserts that a trio of cases, Roig v. Kelsey, 135 N.J. 500, 641 A.2d 248 (1994), D'Aloia v. Georges, 372 N.J.Super 246, 858 A.2d 16 (App.Div.2004), and Kim v. Kim, Docket No. BER-L-5471-08, 2010 WL 2220599, 2010 N.J.Super. Unpub. LEXIS 2302 (Law Div. May 24, 2010), dictates that N.J.S.A. 39:6A-12 be interpreted to preclude plaintiffs from pursuing claims for their medical expenses above and beyond those covered by Cecilia's $15,000 PIP policy.
The issue before the Roig Court was whether N.J.S.A 39:6A-12 prohibited a claimant from recovering in tort his otherwise uncompensated deductible and twenty percent copayment under a PIP policy. 135 N.J at 501, 641 A.2d 248. The Roig Court noted that, in the original No-Fault Act, N.J.S.A. 39:6A-12 stated as follows: "Evidence of the amounts collectible or paid pursuant to sections 4 and 10 of this act to an injured person is inadmissible in a civil action for recovery of damages for bodily injury by such injured person." Id. at 504, 641 A.2d 248.
In 1983, the Legislature amended the No-Fault Act to provide for the selection of a $500, $1000, or $2500 medical expense deductible. Ibid.; L. 1983, c. 362.[1] Under this system, in exchange for choosing a higher deductible, an insured would benefit from paying a lower premium. Ibid. Presumably, because options existed for insureds to have deductibles covered by health insurers, this system would shift the costs of automobile insurance to those alternative insurers, thereby reducing the cost of automobile: insurance overall. Id. at 505-06, 641 A.2d 248.
The 1983 amendment also added language to N.J.S.A. 39:6A-12, providing, in part:
Evidence of the: amounts collectible or paid . . . to an injured person, including the amounts of any deductibles or exclusions elected by the named insured . . . otherwise compensated is inadmissible in a civil action for recovery of damages for bodily injury by such injured person.
Nothing in this section shall be construed to limit the right of recovery, against the tortfeasor, of uncompensated *950 economic loss sustained by the injured party.
[Id. at 506, 641 A.2d 248.]
In response to further spiraling auto insurance costs, the Legislature again amended the No-Fault Act in 1988. Id. at 506, 641 A.2d 248; L. 1988, c. 119.[2] This amendment "mandate[d] a $250 medical deductible and a 20% copayment for medical expenses between $250 and $5,000[,]" which would, the Legislature hoped, lower the costs of insurance premiums for all New Jersey motorists. Id. at 507-14, 641 A.2d 248. N.J.S.A. 39:6A-12 was again amended, to reflect these additions:
[E]vidence of the amounts collectible or paid pursuant to [N.J.S.A. 39:6A-4 and N.J.S.A. 39:6A-10] . . . to an injured person, including the amounts of any deductibles, copayments or exclusions. . . otherwise compensated is inadmissible in a civil action for recovery of damages for bodily injury by such injured person.
The court shall instruct the jury that, in arriving at a verdict as to the amount of the damages for noneconomic loss to be recovered by the injured person, the jury shall not speculate as to the amount of the medical expense benefits paid or payable . . . to the injured person. Nothing in this section shall be construed to limit the right of recovery, against the tortfeasor, of uncompensated economic loss sustained by the injured party.
[Id. at 507, 641 A.2d 248.]
The party seeking recovery of his mandatory deductible and twenty percent copayment in Roig argued that the third paragraph of Section 12 provided for recovery of those "uncompensated" out-of-pocket expenses from the tortfeasor. Id. at 513, 641 A.2d 248. However, in response, the Court reasoned that
all New Jersey motorists[] paid a lower annual insurance premium because of the mandatory PIP medical deductible and copayment. [Therefore,] [t]o allow a claim for the deductible and the copayment would be antithetical to the entire No-Fault statutory scheme. That kind of recovery could be available only if the Legislature reinstituted a fault-based system.
[Id. at 514, 641 A.2d 248.]
The respondent further argued that because these amounts had not been "otherwise compensated," as per the first paragraph of Section 12, they should be admissible. Id. at 514-15, 641 A.2d 248. The Court rejected this interpretation as "contrary to the clear legislative intent of the No-Fault Law[,]" Id. at 515, 641 A.2d 248, which, the Court stated, was enacted and amended with the purposes of removing the need for predetermination of fault prior to recovery, thereby eliminating minor tort claims from the judicial system and expediting relief to accident victims suffering from serious and disabling injuries, which would in turn reduce trial court backlog, as well as the cost of insurance. Id. at 502-11, 641 A.2d 248. To allow litigants to sue in tort for recovery of uncompensated deductibles and copayments would have been contrary to this purpose. The Court concluded by stating, broadly, that *951 the Legislature never intended to leave the door open for fault-based suits when enacting the No-Fault Law. [Otherwise], courts would again feel the weight of a new generation of congestion-causing suits, and automobile-insurance premiums would again rise. If the Legislature disagrees with our interpretation of its intent, it is, of course, empowered to enact clarifying legislation. [Id. at 516, 641 A.2d 248.]
In 1998 the Legislature enacted, as an amendment to the previous No-Fault Act, the Automobile Insurance Cost Reduction Act ("AICRA"), L. 1998, c. 21 and c. 22, N.J.S.A. 39:6A-1.1 to 35. See Craig & Pomeroy 2011 at 87. This amendment changed the first clause of N.J.S.A. 39:6A-12 to read, in part:
. . . [E]vidence of the amounts collectible or paid under a standard automobile insurance policy pursuant to section . . . 39:6A-4 . . . to an injured person, including the amounts of any deductibles, copayments or exclusions . . . otherwise compensated is inadmissible in a civil action for recovery of damages for bodily injury by such injured person. [L. 1998, c. 21, § 16 (new language emphasized).]
In addition, the following definition was added: "`Economic loss' means uncompensated loss of income or property, or other uncompensated expenses, including, but not limited to, medical expenses." L. 1998, c. 21, § 2 (enacted as N.J.S.A. 39:6A-2(k)). This amendment was thought, in some well-respected circles, to "effectively overrul[e]" Roig. See Patterson v. Adventure Trails, 364 N.J.Super 444, 448, 836 A.2d 856 (Law Div.2003) (quoting Craig & Pomeroy, New Jersey Auto Insurance Law 238 (Gann 2003)). However, in D'Aloia, supra, 372 N.J.Super 246, 858 A.2d 16, the Appellate Division laid any such speculation to rest, affirming Roig's ban on the entry of deductibles and copayments into evidence.
The D'Aloia court first noted "that section 2k makes clear that `economic loss,' which section 12 permits an accident victim to recover from the tortfeasor, includes uncompensated medical expenses." Id. at 250, 858 A.2d 16. However, because the part of N.J.S.A. 39:6A-12 prohibiting admission of evidence of deductibles and copayments remained intact, "it logically follow[ed] that they [were] not recoverable." Ibid. Further reasoning that this interpretation was in furtherance of the Legislature's intent in enacting AICRA, the D'Aloia court affirmed denial of the appellant's claim. Id. at 251-52, 858 A.2d 16.
In Kim, supra, 2010 N.J.Super. Unpub. LEXIS 2302, the Law Division first confronted the issue presently before this court; namely, whether N.J.S.A. 39:6A-12 prohibits the entry into evidence of medical expenses, where an insured had chosen $15,000 in PIP coverage. The Kim court's decision revolved, in part, around the definition of "standard automobile insurance policy" in N.J.S.A. 39:6A-12. Id. at *1-2.
As prologue, in enacting AICRA, the Legislature recognized, in part, that:
The high cost of automobile insurance in New Jersey has presented a significant problem for many-lower income residents of the state, many of whom have been forced to drop or lapse their coverage in violation of the State's mandatory motor vehicle insurance laws, making it necessary to provide a lower-cost option to protect people by providing coverage to pay their medical expenses if they are injured.
[N.J.S.A. 39:6A-1.1]
To effectuate this purpose, the Legislature allowed for insurance providers to offer lower levels of PIP coverage, with the goal *952 of enabling lower-income residents to afford automobile insurance by paying lower premiums. While the Pre-AICRA system required a standard automobile insurance policy to provide only $250,000 in medical expense benefits, AICRA allows for more flexibility. A "Standard Automobile Insurance Policy" is now defined as "an automobile insurance policy with at least the coverage required pursuant to [. . . N.J.S.A. 39:6A-4]." N.J.S.A. 39:6A-2(n) (emphasis added). N.J.S.A. 39:6A-4, in turn, defines "Personal Injury Protection Coverage" as:
Payment of medical expense benefits in accordance with a benefit plan provided in the policy and approved by the commissioner, for reasonable, necessary, and appropriate treatment and provision of services to persons sustaining bodily injury, in an amount not to exceed $250,000 per person per accident. . . . Benefits payable under this section shall: (1) Be subject to any option elected by the policyholder pursuant to [N.J.S.A. 39:6A-4.3 (emphasis added).]
N.J.S.A. 39:6A-4.3(e) defines medical expense coverage options as follows: "Medical expense benefits in amounts of $150,000, $75,000, $50,000 or $15,000 per person per accident. . . . If none of the aforesaid medical expense benefits options is affirmatively chosen in writing, the policy shall provide $250,000 medical expense benefits coverage. . . ." AICRA thus allows automobile operators to purchase coverage that is consistent with their financial resources.
The Kim court reasoned that a "standard automobile insurance policy," as that term appears in N.J.S.A. 39:6A-12, "automatically includes PIP coverage of $250,000." Kim, supra, 2010 N.J.Super. Unpub. LEXIS 2302, at *2. Because $250,000 was therefore the "standard," any amount under that amount was "collectible," and thereby excludable from evidence, pursuant to N.J.S.A. 39:6A-12. Id. at *7-8. This conclusion was reached by reasoning that, by allowing insureds the option of paying lower premiums in exchange for lesser amounts of coverage, the Legislature essentially created a trade-off, similar to that in Roig, whereby in exchange for lower premiums, an insured gave up his or her rights in tort:
"If an insured chooses a $1,000 or $2,500 deductible in exchange for a premium reduction, the Legislature, clearly, did not intend that that insured would be able to sue the tortfeasor for the below deductibles. Under that logic, insureds choosing the highest deductible would have the best deal: the lowest premium and the right to recover the excluded expenses in court against the tortfeasor.. . . To allow a claim for the deductible and the copayment would be antithetical to the entire No-Fault statutory scheme. That kind of recovery could be available only if the Legislature reinstituted a fault-based system."
[Id. at *4-5 quoting Roig, supra, 135 N.J. at 514, 641 A.2d 248).]
Accordingly, the Kim court concluded that by choosing a lower premium, an insured forewent "coverage for medical expenses which would be eligible for compensation."[3]Id. at *5. The Kim court further *953 noted that the Legislature set up a PIP system whereby an insured would always be responsible for some part of its medical expenses:
"by mandating the $250 deductible and the twenty-percent copayment, the Legislature guaranteed that in every automobile accident some medical expenses would not be paid under PIP. For those below-deductibles and copayments, the insured was responsible, either through the insured's other insurance coverage, or, if the insured had no other insurance, as in this case, out of the insured's own pocket."
[Id. at *6. (quoting Roig, supra, 135 N.J. at 509, 641 A.2d 248).]
The Kim plaintiff had therefore in effect bargained away its right to sue for the amounts in excess of its $15,000 PIP policy:
Plaintiff purchased a standard automobile policy pursuant to N.J.S.A. 39:6A-4 under which $250,000 in PIP payments were collectible. Plaintiff chose to elect to exclude a portion of those medical payments in return for lower premiums paid. . . . [T]he medical bills which plaintiff seeks to recover from the tortfeasor, which are less than $250,000 but exceed the $15,000 PIP coverage plaintiff chose, are barred from being introduced at the time of trial.
[Id. at *7-8.]

Part II
For the following reasons, this court respectfully disagrees with the Kim court's analysis. While it has been held that "`[t]here is no surer way to misread any document than to read it literally'" Roig, supra, 135 N.J. at 515, 641 A.2d 248 (quoting Guiseppi v. Walling, 144 F.2d 608, 624 (2d Cir.1944) (Hand, J.)), and while the cases above illustrate that the Legislature's broad intent in enacting AICRA could support a holding barring entry into evidence of medical expenses above plaintiffs $15,000 PIP limit, this court is reticent to interpret the Legislature's intent so broadly as to so sharply contradict the unambiguous language of its enactments.
A court's duty "`is to construe a statute as it was written and to enforce the legislative will as written, not according to some unexpressed intention.'" Lemelledo v. Beneficial Mgmt. Corp. of Am., 289 N.J.Super 489, 500-01, 674 A.2d 582 (App. Div.1996) (quoting Unsatisfied Claim & Judgment Fund Bd. v. N.J. Mfrs. Ins. Co., 270 N.J.Super 311, 315, 637 A.2d 191 (App.Div.), aff'd, 138 N.J. 185, 649 A.2d 1243 (1994)). While "[i]n the interpretation of a statute our overriding goal has consistently been to determine the Legislature's intent in enacting a statute," Roig, supra, 135 N.J. at 515, 641 A.2d 248, the plain language of the statute is the "surest indicator" thereof See Alan J. Cornblatt, P.A. v. Barow, 153 N.J. 218, 231, 708 A.2d 401 (1998). Therefore, where the language codified by the Legislature is "plain and clearly reveals the meaning of the statute, the court's sole function is to enforce the statute in accordance with those terms." State Dep't of Law & Public Safety v. Bigham, 119 N.J. 646, 651, 575 A.2d 868 (1990). For a court to presume that the Legislature intended something other than that which it clearly and plainly expressed in plain language would be tantamount to rewriting the Legislature's *954 written enactment by judicial fiat. See Hardwicke v. Am. Boychoir, 368 N.J.Super. 71, 96-97, 845 A.2d 619 (App.Div.2004) ("A court may neither rewrite a plainly-written enactment of the Legislature nor presume that the Legislature intended something other than that expressed by way of the plain language.") (internal citation omitted). This court therefore declines to do so, especially where, as here, a litigant proffers an interpretation in conflict with that statute's plain meaning.
N.J.S.A. 39:6A-2(k)'s definition of "economic loss" specifically includes "medical expenses." N.J.S.A. 39:6A-12, in turn, prohibits itself from being interpreted to preclude a victim in an automobile accident from recovering uncompensated economic losses from a tortfeasor. The Legislature thereby evinced, in clear language, its intention to allow recovery in tort of medical expenses for which an accident victim has not been otherwise compensated.
In contrast, the Roig and D'Aloia courts were faced with language in N.J.S.A. 39:6A-12 that was interpreted to prohibit admittance of evidence of copayments and deductibles. It logically followed that "economic loss" could not be soundly interpreted to include those items. The Roig Court's broad inferences regarding the Legislature's intent were necessary to elucidate otherwise ambiguous statutory language, which could have been read to mean that uncompensated copayments and deductibles qualified as "economic loss." However, in this case, contrary to defendant's exhortations, such inferences should not be applied to contradict the Legislature's clear language.
For this reason, "amounts collectible" (and therefore excludable) under N.J.S.A. 39:6A-12 cannot be construed to include amounts in excess of plaintiff's $15,000 in PIP coverage. Contrary to defendant's assertions, N.J.S.A. 39:6A-2(n), 39:6A-4, and 39:6A-4.3, read together, define a "Standard Automobile Insurance Policy" as providing for PIP coverage of medical expenses of least $15,000. As illustrated above, N.J.S.A. 39:6A-2(n) defines "Standard Automobile Insurance Policy" as "an automobile insurance Policy with at least the coverage required pursuant to [. . . . N.J.S.A. 39:6A-4]" (emphasis added). N.J.S.A. 39:6A-4, in turn, defines benefits payable as the five limits set out in N.J.S.A. 39:6A-4.3. The least amount of coverage available under N.J.S.A. 39:6A-4.3 is $15,000. A policy providing PIP coverage for medical expenses of $15,000 therefore falls under N.J.S.A. 39:6A-2(n)'s definition of a "Standard Automobile Insurance Policy," as would a PIP policy providing coverage of any of the other four amounts enumerated under N.J.S.A. 39:6A-4.3.
Defendant asserts that a "standard automobile insurance policy" is $250,000, and that the lower amounts of coverage provided for in N.J.S.A. 39:6A-4.3 are therefore outside of this definition. However, defendant's proffered definition is in conflict with the in pari materia reading of N.J.S.A. 39:6A-2(n), 39:6A-4 and 39:64.3, as illustrated above. "Statutes are to be read in pari, materia, that is, those which relate to the same matter or subject. . . are to be construed together as a unitary and harmonious whole, in order that each may be fully effective." Clifton v. Passaic Cnty. Bd. of Taxation, 28 N.J. 411, 421, 147 A.2d 1 (1958); accord Marino v. Marino, 200 N.J. 315, 330, 981 A.2d 855 (2009). N.J.S.A. 39:6A-2(n) defines a "standard automobile insurance policy" as providing for PIP coverage of medical expenses of at least the amount provided in N.J.S.A. 39:6A-4. N.J.S.A. 39:6A-4 in turn states that a standard policy shall not *955 exceed $250,000 per person, per accident,[4] and further states that benefits payable are subject to any option elected pursuant to N.J.S.A. 39:6A-4.3, which provides for coverage as low as $15,000. Under defendant's proffered definition, the statutes' references to a "minimum" and "maximum" coverage range is superfluous. Indeed, if the Legislature had, intended a "standard" policy to only provide one level of coverage, then it could have done so, rather than providing for a range of coverage. Defendant's definition also conflicts with N.J.S.A. 39:6A-4, which, by referencing N.J.S.A. 39:6A-4.3, provides for coverage under a standard policy of far less than $250,000. To define a "standard automobile insurance policy" as providing for only $250,000 in PIP coverage is therefore in conflict with an in pari materia reading of the above statutes. Accordingly, this court declines to adopt defendant's definition.
An "amount collectible" under N.J.S.A. 39:6A-12 therefore depends on the limit of the insured's PIP policy, which in this case was $15,000. Plaintiffs are therefore only barred from admitting evidence of medical expenses under that amount.

Part III
In discerning . . . [legislative] intent we consider not only the particular statute in question, but also the entire legislative scheme of which it is a part[,]. . . [giving] primary regard . . . to the fundamental purpose for which the legislation was enacted. . . . [T]o this end, the particular words are to be made responsive to the essential principle of the law. It is not the words but the internal sense of the law that controls . . .
[Roig, supra, 135 N.J. at 515, 641 A.2d 248 (internal quotations and citations omitted).]
For decades, courts have repeatedly stated that the primary purpose of N.J.S.A. 39:6A-12 is to prevent double recovery of damages. See, e.g., D'Orio v. W. Jersey Health Sys., 797 F.Supp. 371 (D.N.J.1992); Aetna Ins. Co. v. Gilchrist Bros., 85 N.J. 550, 562, 428 A.2d. 1254 (1981), superseded on other grounds by statute, as stated in Hanover Ins. Co. v. Lewis, 260 N.J.Super. 380, 616 A.2d 963 (Law Div.1992) ("In enacting the No Fault Act the Legislature determined that subrogation should not be allowed for PIP benefits and expressed the policy that an insured was not entitled to double recovery of the same damages.") (citing Mario A. Iavicoli. No Fault & Comparative Negligence in New Jersey 117 (1973)); Roig, supra, 135 N.J. at 512-13, 641 A.2d 248 ("The fear of double recovery, i.e., collecting PIP benefits and recovering through a civil action, had been the earliest concern about cost Control . . .") (citing, e.g., Amaru v. Stratton, 209 N.J.Super 1, 506 A.2d 1225 (App.Div. 1985)); UCJF v. N.J. Mfrs. Ins. Co., 138 N.J. 185, 197, 649 A.2d 1243 (1994); Martin v. Home Ins. Co., 141 N.J. 279, 287, 661 A.2d 808 (1995) citing Wilson v. UCJF, 109 N.J. 271, 281, 536 A.2d 752 (1988); Bardis v. First Trenton Ins. Co., 199 N.J. 265, 278-79, 971 A.2d 1062 (2009)) (recognizing "that the injured person who was the beneficiary of the PIP payments could not and should not recover from the tortfeasor the medical, hospital and other *956 losses for which he had already been reimbursed.") (citing Cirelli v. Ohio Cas. Ins. Co., 72 N.J. 380, 387, 371 A.2d 17 (1977)); Adams v. Cooper Hosp., 295 N.J.Super. 5, 12, 684 A.2d 506 (App.Div.1996) (citing Rybeck v. Rybeck, 141 N.J.Super 481, 508, 358 A.2d 828 (Law Div.1976), appeal dismissed, 150 N.J.Super 151, 375 A.2d 269 (App.Div.), certif. denied, 75 N.J. 30, 379 A.2d 261 (1977)); Perreira v. Rediger, 330 N.J.Super 455, 462, 750 A.2d 126 (App. Div.2000), overruled on other grounds, 169 N.J. 399, 778 A.2d 429 (2001); Bernick v. Aetna Life & Cas., 158 N.J.Super. 574, 582, 386 A.2d 908 (Dist.Ct.1978); Lattimer v. Boucher, 189 N.J.Super. 33, 38, 458 A.2d 528 (Law Div.1983). This court's interpretation is therefore in harmony with this long-recognized legislative purpose.
This court is also cognizant of the Legislature's intent to allow for consumer choice. As illustrated above, Roig recognized a legislative intent to bar recovery of deductibles and co-payments as a trade-off for lower premiums and the convenience of the no-fault system. "Compensated medical deductibles and copayments are fixed and capable of calculation at the time the insured is issued the policy. It is the insured who determines what type of premium he or she will pay by selecting an appropriate deductible in exchange for a premium reduction." Bennett v. Hand, 284 N.J.Super 43, 45-46, 663 A.2d 130 (App.Div.1995) (holding that an accident victim who does not meet verbal threshold can sue for lost income, despite Roig's broad definition of legislative intent). However, medical expenses are distinguished. Unlike deductibles and copayments, an accident victim can hardly be expected to anticipate the severity of his or her injuries, and the consequent expense of his or her medical care. AICRA is devoid of any legislative intent to have insureds bargain for potentially bankrupting medical bills, in exchange for lower premiums. In fact, the express language of the third paragraph of N.J.S.A. 39:6A-12, read in conjunction with N.J.S.A. 39:6A-2(k), states the opposite.
Plaintiffs are not having their cake and eating it, too. Their medical expenses are not instantly recoverable. Instead, they must file suit, go through the discovery process, and run the gauntlet of proving defendant's liability, as well as the necessity and reasonableness of the medical bills, to a jury. That process typically takes years. Even if they are successful in this endeavor, they will still have to collect their damages, which could be impossible if a defendant is uninsured, or underinsured. So, while plaintiffs have been able to recoup a portion of their medical expenses fairly quickly, they must now labor without the assuredness of the no-fault systera and proceed through the tort system to, hopefully, recover the remainder. Moreover, if the excess medical expenses are recovered, it is not a windfall to plaintiffs, because these expenses are owed to their medical providers.
This court is mindful of the Legislature's intent, in enacting the no-fault legislation, to eliminate minor claims from the courts and reduce trial backlog. How^ever, in the face of express statutory language to the contrary, this intent should be effectuated with discretion:
We are mindful that from the inception of the no-fault statutory scheme, the Legislature intended to eliminate minor personal-injury-automobile-negligence cases from the court system . . . and permitting a person whose injuries do not satisfy the verbal threshold to recover lost income, at least to the extent that the income loss is otherwise uncompensated, will cause many claims for lost income in minor automobile accident cases. However, the Legislature clearly *957 provided for recovery of such "uncompensated economic loss."
[Loftus-Smith v. Henry, 286 N.J.Super. 477, 489, 669 A.2d 852 (App.Div.1996).]
This court likewise declines to so broadly execute the Legislature's intent. Plaintiffs' medical expenses are hardly minor. In addition, defendant concedes that, under its proffered statutory construction, had plaintiffs incurred medical expenses even one dollar in excess of $250,000, that minor excess expense would be permitted into evidence before a jury. It is incongruous that a standard policyholder, who had chosen a lower option provided for by the Legislature, and accepted the risk of indebtedness to medical providers, would be prohibited from entering his or her expenses into evidence as well. There is little evidence that the Legislature intended to make such a distinction between those who can afford maximum coverage and those who cannot. To the contrary, as illustrated above, the provision for lesser amounts of coverage was to enable lower-income drivers in enter the no-fault system, not have them take on potentially insurmountable medical bills in the event of a serious accident, with no means of recovery.

CONCLUSION
For the foregoing reasons, defendant's motion to bar entry into evidence of plaintiffs' medical expenses is denied.
NOTES
[1] The 1983 amendment also provided for a tort limitation option, whereby, in exchange for lower premiums, an insured would be limited in their right to sue for pain and suffering where their medical expenses were below particular thresholds. Roig, supra, 135 N.J. at 504-05, 641 A.2d 248. The provision of this option was consistent with the overall goals of the No Fault Act of eliminating minor tort claims and reducing court backlog, thereby expediting serious claims and reducing the cost of insurance. Id. at 506, 641 A.2d 248.
[2] The 1988 amendment provided for two tort options. Roig, supra, 135 N.J. at 507, 641 A.2d 248. The first, known as the "verbal threshold" provided for the recovery of noneconomic damages only in nine specific situations, in exchange for lower premiums. Ibid. The second, known as the "no threshold" option, provided for unlimited recovery of non-economic damages, in exchange for higher premiums. Ibid. The provision of these options would further the goals of the No-Fault Act by ostensibly limiting tort claims, thereby reducing court congestion and reducing the cost of auto insurance.
[3] Consumer-choice principles have also bolstered the Appellate Division's conclusion that AICRA prohibits an uninsured tortfeasor from recovering medical expenses and lost income from a tort recovery. "A consumer could elect certain automobile coverages which would provide greater or lesser rights. The trade-off was in premiums paid. Greater rights required higher premiums; lesser rights generated lower premiums." Monroe v. City of Paterson, 318 N.J.Super. 505, 508-09, 723 A.2d 1266 (App.Div. 1999) (citing Roig. supra, 135 N.J. at 506-07, 641 A.2d 248). After the incident giving rise to Mon roe, but prior to the Appellate Division's holding, the Legislature had affirmatively barred actions by uninsureds. See N.J.S.A. 39:64.5(a). That prohibition was recently extended to an uninsured owner of a vehicle occupying that vehicle as a passenger. See Perrelli v. Pastorelle, 206 N.J. 193, 20 A.3d 354 (2011).
[4] N.J.S.A. 39:6A-10 does permit insurers to provide additional medical expense coverage in excess of $250,000 to named insureds who have chosen a standard automobile insurance policy, their resident relatives and others provided for under N.J.S.A. 39:6A-4. However, this "Cadillac" option, insofar as it is in excess of $250,000, falls outside the definition of "standard automobile insurance policy" as per N.J.S.A. 39:6A-4. To define the "Cadillac" option otherwise would render N.J.S.A. 39:6A-4's proscription on maximum coverage for a "standard automobile insurance policy" ineffective.