JUSTICE ALBIN, dissenting.
Today's opinion will have a catastrophic impact on the right of low-income automobile accident victims to recover their medical costs from the wrongdoers who cause their injuries. The decision **296 leaves innocent automobile accident victims without the legal right to sue negligent and reckless drivers for recovery of their unpaid medical bills -- medical bills that will bankrupt some and financially crush others. The majority's mistaken interpretation of *278 N.J.S.A. 39:6A-12 will widen the divide among economic classes in our civil justice system.
N.J.S.A. 39:6A-12 is intended to prevent a double recovery of damages. It is not intended to deny an automobile accident victim a just recovery of damages. N.J.S.A. 39:6A-12 provides that an insured accident victim cannot sue the wrongdoer for the recovery of economic costs when the insured had been or will be paid those costs through Personal Injury Protection (PIP) coverage. That statute, however, also provides that "[n]othing in this section shall be construed to limit the right of recovery, against the tortfeasor, of uncompensated economic loss sustained by the injured party." N.J.S.A. 39:6A-12. Despite the absolute clarity of that language, the majority construes the statute "to limit the right of recovery, against the tortfeasor, of uncompensated economic loss sustained by the injured party." See ibid.
The Legislature has gone to great lengths to make automobile insurance affordable to low-income residents, allowing them to opt for lesser PIP coverage in standard, basic, and special policies. The Legislature did not require low-income accident victims to surrender their right to sue the wrongdoer for their uncompensated medical costs because they could not afford higher PIP coverage. The majority construes N.J.S.A. 39:6A-12 to bar an innocent automobile accident victim, only able to afford PIP benefit coverage of $ 15,000, from suing a wrongdoer for unpaid medical expenses exceeding $ 15,000 but less than $ 250,000. Under the majority's interpretation, a victim with $ 15,000 in PIP coverage who suffers $ 249,000 in economic damages is unable to sue for $ 234,000 in unpaid medical costs. But an affluent victim who can afford $ 250,000 in PIP coverage and who suffers economic damages of $ 250,100 can sue the tortfeasors for $ 100 in unpaid medical expenses.
**297 To reach that absurd result, the majority not only misreads the plain wording of N.J.S.A. 39:6A-12 and the legislative history of the No Fault Act, N.J.S.A. 39:6A-1 to -35, but also advances an interpretation of the law at complete odds with public policy. The majority's erroneous interpretation of the statute is not without a remedy. The Legislature can make clear that today's decision is not what it meant or ever envisioned.
I therefore respectfully dissent.
I.
Joshua Haines and Tuwona Little suffered serious physical injuries caused by the alleged negligence of drivers who struck their vehicles. Haines and Little filed separate personal-injury lawsuits against the alleged wrongdoers to recover the unpaid medical expenses incurred for the treatment of their injuries. Haines's automobile insurance policy provided $ 15,000 in PIP benefits. He accumulated $ 43,000 in medical expenses, leaving him with $ 28,000 in unreimbursed expenses. Little's automobile insurance policy provided $ 15,000 in PIP benefits. She accumulated $ 25,488 in medical expenses, leaving her with $ 10,488 in unpaid expenses.
The majority has concluded that Haines and Little cannot sue for the recovery of the $ 28,000 and $ 10,488 in uncompensated economic losses that they suffered because of their wrongdoers' negligence. That result cannot be squared with the history of our common law and with our current statutes.
A.
Under the common law, a person injured by the negligent acts of another had an unqualified right to the recovery of medical expenses from the wrongdoer. See *279 Sotomayor v. Vasquez, 109 N.J. 258, 261, 536 A.2d 746 (1988). At the inception of New Jersey's Automobile Reparation Reform Act (No Fault Act), an insured automobile accident victim had no need to sue for uncompensated **298 medical expenses because the new law mandated that the victim's insurance carrier make "prompt 'payment of out-of-pocket medical expenses' without regard to fault." See DiProspero v. Penn, 183 N.J. 477, 485, 874 A.2d 1039 (2005) (quoting Caviglia v. Royal Tours of Am., 178 N.J. 460, 466, 842 A.2d 125 (2004) ). "The No Fault Act ushered in 'a system of first-party self-insurance' ..." Ibid. (quoting Caviglia, 178 N.J. at 466, 842 A.2d 125 ). The new law required every automobile insurance policy carrier to provide the named insured and his family household members "personal injury protection [PIP] benefits" -- medical expense benefits -- in the event they were injured in an automobile accident, regardless of their fault. Caviglia, 178 N.J. at 466, 842 A.2d 125 (alteration in original) (quoting N.J.S.A. 39:6A-4.1 ).
Unlike today, the first iteration of the No Fault Act required insurance carriers to provide unlimited PIP coverage. N.J.S.A. 39:6A-4 (1973). With unlimited PIP coverage, the law was designed as a true no-fault system for the payment of medical expenses. Nevertheless, an automobile accident victim still had the right to sue for noneconomic damages, such as pain and suffering, based on fault, if the victim suffered permanent injuries or incurred treatment costs of $ 200 or more. Caviglia, 178 N.J. at 467, 842 A.2d 125. Then, as now, the automobile tort system had fault and no-fault components. In promoting the adoption of the No Fault Act, Governor William Cahill expressed confidence that the new law would "preserv[e] th[e] victim's right to full and adequate compensation." Governor William T. Cahill, Second Annual Message 55 (Jan. 11, 1972). From the beginning, our automobile tort system did not envision that a victim would be left with uncompensated medical costs while the wrongdoer walked away scot-free.
The bright hopes for our no-fault system did not match the financial reality. "In the decades that followed the birth of No Fault, the Legislature grappled with the intractable problem of the spiraling cost of automobile insurance." Caviglia, 178 N.J. at 468, 842 A.2d 125. The Legislature repeatedly amended the No Fault Act, "seeking to achieve the elusive balance of making **299 premiums affordable while allowing injured automobile accident victims to pursue compensation for their injuries." DiProspero, 183 N.J. at 485, 874 A.2d 1039.
In 1990, the cost of escalating insurance rates led the Legislature to cap for the first time medical expense (PIP) benefits at "$ 250,000[ ] per person per accident." N.J.S.A. 39:6A-4(a) (1990) (emphasis omitted); N.J.S.A. 17:33B-2(d) (1990). Nothing in the amended law barred an automobile accident victim from suing the wrongdoer for uncompensated costs exceeding $ 250,000. The 1990 amendments to the No Fault Act did not solve the crisis of rising insurance premiums that made automobile insurance unaffordable for many residents.
In 1998, the Legislature addressed again the climbing costs of automobile insurance coverage that caused many low-income residents to forgo insurance entirely. With the passage of the Automobile Insurance Cost Reduction Act (AICRA), N.J.S.A. 39:6A-1.1 to -35, the Legislature declared the need to make automobile insurance more affordable to low-income residents:
The high cost of automobile insurance in New Jersey has presented a significant problem for many-lower income residents of the state, many of whom have been forced to drop or lapse their coverage in violation of the State's mandatory *280 motor vehicle insurance laws, making it necessary to provide a lower-cost option to protect people by providing coverage to pay their medical expenses if they are injured.
[ N.J.S.A. 39:6A-1.1(b).]
The Legislature determined that one means of achieving the goal of affordable automobile insurance for low-income residents was to give them the choice of reduced premium payments in exchange for lesser PIP benefit coverage. Ibid. AICRA allowed residents to select between a standard and basic insurance policy. A standard policy permits an insured, in exchange for reduced premiums, the option of choosing "[m]edical expense benefits in amounts of $ 150,000, $ 75,000, $ 50,000 or $ 15,000 per person per accident" instead of the default amount of $ 250,000. N.J.S.A. 39:6A-4.3(e) ; N.J.S.A. 39:6A-4. The basic policy also provides PIP
**300 benefit coverage "in an amount not to exceed $ 15,000 per person" for non-catastrophic injuries. N.J.S.A. 39:6A-3.1(a).
In 2003, the Legislature established the "special policy," a new automobile insurance policy designed "to assist certain low income individuals in this State and encourage their greater compliance in satisfying the mandatory private passenger automobile insurance requirements." N.J.S.A. 39:6A-3.3(a) (2003). In exchange for the lowest possible premium, an insured can select the special policy, which provides medical expense benefits only for "payment of treatment for emergency care in an amount not to exceed $ 250,000 per person per accident."See N.J.S.A. 39:6A-3.3(b)(1).
The Legislature enacted AICRA and other amendments to make insurance more affordable -- not to deny our citizens the right to recover their medical costs. See Wise v. Marienski, 425 N.J. Super. 110, 126, 39 A.3d 947 (Law. Div. 2011) ("[T]he provision for lesser amounts of coverage was to enable lower-income drivers to enter the no-fault system, not have them take on potentially insurmountable medical bills in the event of a serious accident, with no means of recovery."). None of the No Fault amendments suggested that the trade-off for low-income residents purchasing policies with PIP coverage of less than $ 250,000 -- the only policies they presumably could afford -- was that they must sacrifice their common law right to sue for uncompensated medical expenses.
B.
From its inception, the No Fault Act barred an injured driver "from suing the tortfeasor for the very PIP benefits reimbursable through his own insurance carrier." Caviglia, 178 N.J. at 467, 842 A.2d 125 ; N.J.S.A. 39:6A-12 (1973). That ensured that the victim did not receive a double recovery, limited litigation over paid PIP benefits, and provided relief to congested court calendars. Roig v. Kelsey, 135 N.J. 500, 513, 641 A.2d 248 (1994).
The plain language of N.J.S.A. 39:6A-12 makes clear that an automobile accident victim who receives PIP benefits cannot sue **301 the wrongdoer for reimbursed medical expenses. N.J.S.A. 39:6A-12 provides that "evidence of the amounts collectible or paid" under a standard, basic, or special automobile insurance policy "to an injured person, including the amounts of any deductibles, copayments or exclusions, including exclusions pursuant to [ N.J.S.A. 39:6A-4.3 ], otherwise compensated is inadmissible in a civil action for recovery of damages for bodily injury by such injured person." That statute further provides: "Nothing in this section shall be construed to limit the right of recovery, against the tortfeasor, of uncompensated economic loss sustained by the injured party." Ibid. *281 "For decades, courts have repeatedly stated that the primary purpose of N.J.S.A. 39:6A-12 is to prevent double recovery of damages." Wise, 425 N.J. Super. at 123, 39 A.3d 947 (collecting cases); see also Roig, 135 N.J. at 512, 641 A.2d 248 ("The fear of double recovery, i.e., collecting PIP benefits and recovering through a civil action, had been the earliest concern about cost control ...."). The statute prevents double recovery of damages by barring the introduction of "evidence of the amounts collectible or paid" under a standard, basic, or special automobile insurance policy in a civil action. See N.J.S.A. 39:6A-12.
N.J.S.A. 39:6A-4, in conjunction with N.J.S.A. 39:6A-4.3, provides for five PIP coverage options in a standard automobile insurance policy: $ 15,000, $ 50,000, $ 75,000, $ 150,000, or $ 250,000. PIP coverage of $ 250,000 is the default option unless the insured "affirmatively chose[ ] in writing" a lesser PIP coverage option.[1] N.J.S.A. 39:6A-4.3(e). The majority takes the position that if the insured does not opt for $ 250,000 in PIP coverage, the insured with lesser-elected coverage cannot sue for unpaid medical benefits unless they exceed $ 250,000.
**302 Whether insureds select a special or basic policy, which provides minimal PIP coverage, or one of the non-default standard policy options, such as $ 15,000 PIP coverage, will likely depend on their income. A rational policyholder who can afford $ 250,000 PIP coverage likely will opt for that form of self-insurance coverage because payment of medical expenses will not depend on the amount of liability insurance the wrongdoer carries or whether the wrongdoer is insolvent.
The majority makes the fanciful argument that an insured with $ 15,000 in PIP benefits, who is permitted to sue for uncompensated economic loss up to $ 250,000, may be in a superior position to an insured with PIP coverage of $ 250,000. That argument ignores that those who are self-insured with $ 250,000 in PIP coverage do not have to go through the rigors, uncertainties, and expenses of the tort system for payment of their medical expenses if they are negligently harmed. The low-income resident with $ 15,000 in PIP coverage holds no preferred status under the legislative scheme. That person would not have the right to immediate recovery of medical costs unlike his affluent counterpart. That person would have to file a lawsuit and take discovery, and then prove liability and the reasonableness of medical bills before a jury -- a process that often takes years and with no certain outcome. See Wise, 425 N.J. Super. at 125, 39 A.3d 947. Insureds who can afford only $ 15,000 in PIP coverage do not reap a windfall because they have the burden of proving to a jury, rather than a PIP arbitrator, that their medical expenses are reasonable and necessary.
Low-income residents do not have options available to affluent residents -- such as the option to purchase a platinum automobile insurance policy. The Legislature cannot remove income inequality in our State. But it has given all residents injured in automobile accidents access to our justice system for the recovery of uncompensated medical costs caused by negligent wrongdoers. That is the point missed by the majority.
**303 The majority's interpretation cannot be reconciled with the Legislature's mandate *282 that "[n]othing in [ N.J.S.A. 39:6A-12 ] shall be construed to limit the right of recovery, against the tortfeasor, of uncompensated economic loss sustained by the injured party," N.J.S.A. 39:6A-12, and that the definition of economic loss includes "uncompensated ... medical expenses," N.J.S.A. 39:6A-2(k).
Let us look at the tale of two insureds under the majority's interpretive regime. Insureds Amy and Bill suffer injuries caused by negligent drivers and both incur $ 245,000 in medical costs. Amy was able to afford $ 250,000 in PIP coverage and therefore her medical costs will be paid in a timely manner by her carrier. Bill was able to afford only $ 15,000 in PIP coverage and is barred from suing the negligent driver who has $ 500,000 in liability insurance for the $ 230,000 in unpaid medical costs. Bill will have liens placed on his home, his wages will be garnished, and his life will be left in economic ruins despite the fact he was an innocent victim of a tragic accident. The wrongdoer and his insurance carrier under this regime walk free of the financial carnage left behind.
Barring an automobile accident victim bound to the $ 15,000 PIP coverage option from seeking reimbursement of medical expenses exceeding $ 15,000 from the tortfeasor is not merely at odds with N.J.S.A. 39:6A-12's clear language, but also renders the statutory scheme inequitable and irrational -- a result that the Legislature did not intend. In the Haines case, a son was operating his father's car when he was injured in an accident due to the negligence of others. The son was bound to his father's selection of the $ 15,000 PIP coverage and left with approximately $ 28,000 in unpaid medical expenses that he could not recoup from the alleged wrongdoers. This unjust result has further unforeseen consequences. Healthcare providers may refuse to offer medical services if the payment of their medical costs cannot be guaranteed. To the extent that some innocent victims of automobile accidents may turn to charity care, then the cost will be borne by all taxpayers.
**304 Even if N.J.S.A. 39:6A-12 were susceptible to two plausible interpretations, the "settled rule [is] that a statute in derogation of the common law must be strictly construed." Farmers Mut. Fire Ins. Co. of Salem v. N.J. Prop.-Liab. Ins. Guar. Ass'n, 215 N.J. 522, 545 n.6, 74 A.3d 860 (2013) (quoting Ross v. Miller, 115 N.J.L. 61, 64, 178 A. 771 (Sup. Ct. 1935) ). The right to sue a wrongdoer for the costs of injuries caused to an innocent victim is a hallmark of our common law. Jersey Cent. Power & Light Co. v. Melcar Util. Co., 212 N.J. 576, 594, 59 A.3d 561 (2013) ("Negligence liability is rooted in fundamental, common-law 'social, moral and ethical policy' ...." (quoting Wytupeck v. Camden, 25 N.J. 450, 460, 136 A.2d 887 (1957) ) ).
It bears mentioning that under N.J.S.A. 39:6A-8(b), an insured may select the "[n]o limitation on lawsuit option," which permits the filing of a lawsuit for pain and suffering of an indeterminate dollar value, regardless of whether the victim suffered permanent injuries. If Haines's father had selected the no limitation on lawsuit option, Haines theoretically could have recovered $ 28,000 in pain and suffering damages but, given the majority's interpretation of N.J.S.A. 39:6A-12, not recover $ 28,000 in unpaid medical expenses. Looking at the statutory framework as a whole underscores the weakness of the majority's position.
The majority states that it "cannot conclude that the Legislature clearly intended Section 12 to allow fault-based suits consisting solely of economic damages claims for medical expenses in excess of an elected lesser amount of available PIP coverage." Ante at ----, --- A.3d at ----. Presumably, *283 the majority's reasoning here would also bar tort victims with basic and special policies from suing for medical expenses of less than $ 250,000 because, like Haines and Little, those basic and special policyholders also had the option of purchasing a standard policy with the maximum $ 250,000 in benefits, but elected not to do so.
The Legislature did not frame a statute that denied innocent automobile victims the right to sue for the recovery of their medical expenses merely because they could not afford to pay for **305 a better insurance policy. It is not a fair trade-off, as the majority argues, to deny an insured who can afford only $ 15,000 in PIP coverage the opportunity to recoup $ 235,000 in unpaid medical costs caused by a negligent wrongdoer.
Last, the Court's 1994 decision in Roig, 135 N.J. 500, 641 A.2d 248, does not command the inequitable outcome reached by the majority. In Roig, the Court construed the then-version of N.J.S.A. 39:6A-12 as prohibiting the victim of a motor vehicle accident from recovering "from a tortfeasor the medical-expense deductible and twenty-percent copayment under a personal-injury-protection (PIP) policy." Id. at 501, 641 A.2d 248. The Court reasoned that, in passing the no-fault scheme, "the Legislature intended to eliminate minor personal-injury-automobile-negligence cases from the court system." Id. at 510, 641 A.2d 248. In Roig, the plaintiff was suing to recoup the deductible and copayment for less than $ 600 in medical expenses. Id. at 501, 641 A.2d 248. Cases such as Roig, in which plaintiffs might seek recovery of copayments and deductibles represent the type of minor personal-injury actions that the Court feared would clog an already congested civil court system. Id. at 515, 641 A.2d 248 ("[T]he Legislature did not intend that the insured could sue the tortfeasor for the minor amounts of unpaid deductibles and copayments."). The amounts at issue here are far from minimal.
Significantly, four years after the Roig decision, the Legislature in 1998 made clear that the definition of economic loss in N.J.S.A. 39:6A-12 included uncompensated medical expenses, N.J.S.A. 39:6A-2(k) -- a move presumably intended to interdict the misguided interpretation that the majority now gives to the statute.
At least since 2011, after Judge Grispin's decision in Wise, the Essex County vicinage has operated under an interpretation of N.J.S.A. 39:6A-12 that allows accident victims to sue for uncompensated medical costs. Nothing in the record suggests that the machinery of justice in Essex County has come to a grinding halt or is even lumbering along. Moreover, our courts routinely handle claims of less than $ 3000 in the Small Claims Section of the **306 Special Civil Part, R. 6:1-2(a)(2), and claims of less than $ 15,000 in the regular Special Civil Part, R. 6:1-2(a)(1), in all manner of cases. In a judicial system that opens the courthouse door to even minor claims, the denial of the right of an automobile accident victim to seek recovery of substantial amounts of uncompensated medical costs from the wrongdoer is inconsistent with notions of equal justice.
II.
Today's decision will have a devastating impact on low-income insureds who must settle for lesser PIP coverage options because they cannot afford the highest coverage. Because of their financial circumstances, those insureds are denied access to the courts to recover their uncompensated medical expenses from the wrongdoers who caused their injuries. Some automobile injury victims and their families may be bowed by crushing debt; others may be bankrupted. The message from the *284 majority opinion is that the innocent insured must bear the financial burden caused by the irresponsible wrongdoer. That perverse concept is not written into N.J.S.A. 39:6A-12, was not intended by the Legislature, and is completely foreign to our common law.
The Legislature can fix the inequity read into the statute by the majority if it wishes to do so.
For the reasons expressed, I respectfully dissent.

For those who select the $ 150,000, $ 75,000, $ 50,000, or $ 15,000 PIP coverage options, PIP benefits are still payable "in an amount not to exceed $ 250,000 for all medically necessary treatment of permanent or significant" injuries as defined in N.J.S.A. 39:6A-4.3(e).